**LA RAZA UNIDA PARTY et al., Relators,**

v.

**Harold J. DEAN, Judge et al.,
Respondents.**

No. B–2278.

Supreme Court of Texas.

Oct. 7, 1970.

Burnett & Childs, Richard J. Clarkson, Odessa, for relators.

Stayton, Maloney, Black, Hearne & Babb, John W. Stayton, Hardy Hollers, Austin, Alfred Fitzpatrick, County Atty., Carrizo Springs, for respondents.

ORIGINAL MANDAMUS
PROCEEDING

CALVERT, Chief Justice.

La Raza Unida Party, an independent political party without a state organization, seeks by this proceeding to have writs of mandamus issued to the county judges and county clerks of Dimmit, La Salle and Zavala Counties directing that the names of the party's nominees for certain county and precinct offices be printed on the ballot to be used in the general election in November. The petition for the writs is denied.

The right of political parties without state organizations to have the names of their local nominees placed on the general election ballot is governed by Art. 13.54, Texas Election Code, V.A.T.S., which reads:

Any political party without a State organization desiring to nominate candidates for county and precinct offices only may nominate such candidates therefor under the provisions of this title by primary elections or by a county convention held on the legal primary election day, which convention shall be composed of delegates from various election precincts in said county, elected therein at primary conventions held in such precincts between the hours of 8:00 a. m. and 10:00 p. m. on the date set by law. All nominations made by any such parties shall be certified to the county clerk by the chairman of the county committee of such party and, after taking the same course as nominations of other parties so certified, shall be printed on the official ballot in a separate column, headed by the name of the party; provided, a written application for such printing shall have been made to the county judge, signed and sworn to by three per cent (3%) of the entire vote cast in such county at the last general election.

In our view, the statute delineates in logical sequence the procedure to be followed

and the steps to be taken. When nomination is by convention, the steps are: (1) election at precinct conventions of delegates to a county convention; (2) nomination of candidates by the county convention; (3) certification by the party county chairman of nominees to the county clerk; (4) signing under oath, by qualified voters, equal to or greater than three per cent of the entire vote cast in the county at the last general election, of a written application to have the names of the party's nominees printed on the official ballot; (5) filing of the written application with the county judge; (6) printing of the names of the nominees on the ballot in a separate column under the name of the party.

The statute does not expressly provide that the application to have the names of the party's nominees printed on the ballot shall be signed and filed *after* the names of the nominees have been certified to the county clerk, but that seems to us to be the only logical and reasonable interpretation; otherwise, party leaders could foist upon the signers totally unacceptable candidates and thus defeat the purpose of the application. We do not believe the legislature intended that voters should be blindfolded when asked to sign an application to have the names of a party's nominees printed on the ballot.

Our interpretation of Art. 13.54 makes it harmonious with other provisions of the election code governing the right of independent candidates to a place on the ballot by virtue of voter application. The names of independent candidates for state, district, county or precinct offices (Art. 13.-50), or for city or town office (Art. 13.53), may be printed on the ballot only when the names of such candidates are known to the qualified voters who petition therefor. See also Art. 13.47a and Oney v. Ammerman, 458 S.W.2d 54 (Tex.Sup. 1970). Our interpretation serves the further beneficial purpose of assuring that persons asked to sign an Art. 13.54 petition will, more often than not, have available to

them the names of all other candidates for the same offices, and will be in better position to make an intelligent decision as to whether they should sign.

We do *not* hold that applications signed and filed pursuant to Art. 13.54 must contain the names of the party nominees; but we do hold that the names of such party nominees must have been certified to the county clerk before an application to have their names printed on the ballot is signed and filed. With this interpretation, those seeking to place names of Art. 13.54 nominees on the general election ballot will still have more than four months in which to gather signatures; and surely the state has a legitimate interest in assuring its citizen-electors that they will not be called upon, by whomsoever they may be importuned to sign a petition, to act in ignorance of the consequences.

Relators' petition for writs of mandamus admits that its applications in the three counties were signed and filed with the respective county judges before its county conventions were held and, therefore, before the names of its nominees were known and certified to the county clerk. Its petition for writs of mandamus is accordingly denied. A motion for rehearing will not be entertained.

Dissenting opinion by POPE, J.

POPE, Justice (dissenting).

In my opinion La Raza met the three per cent (3%) requirement of Article 13.54, Texas Election Code, as to Dimmit County, but did not completely meet the requirements of that section as to La Salle and Zavala Counties.

I respectfully disagree with the majority opinion. This record shows that La Raza in good faith, commenced as early as February, 1970, in its effort to understand Article 13.54 and to comply with it. In the course of La Raza's efforts to get the party's candidates on the ballots, both the Secretary of State and the Attorney Gen-

eral studied the problem and wrote opinions. The Secretary of State ruled that La Raza's candidates' names should be printed on the ballots. The Attorney General disagreed. These carefully studied and prepared opinions indicate that even the most qualified students of election law could not find the clarity of meaning in Article 13.54 which this court has found.

The misunderstanding of the indefinite and obscure statute should not prevent La Raza's candidates from appearing on the ballot.