**Nora Mae TYLER et al., Relators,**

v.

**George E. COOK et al., Respondents.**

**No. 16171.**

Court of Civil Appeals of Texas,
San Antonio.

Oct. 11, 1978.

Hardy W. Hollers, Samuel D. McDaniel, Austin, for relators.

Warren Weir, Gochman & Weir, San Antonio, H. Clyde Farrell, Crystal City, for respondents.

OPINION

MURRAY, Justice.

In this proceeding, Relators are Nora Mae Tyler, the duly elected and certified nominee of the Democratic Party for the office of County and District Clerk of La Salle County, Texas; Vernon Brown, the duly nominated and certified nominee of the Democratic Party for County Judge of La Salle County, Texas; and Roberto F. Aldaco, the duly nominated and certified nominee of the Democratic Party for County Commissioner, Precinct 2, La Salle County, Texas. They seek by this proceeding to have writs of mandamus issued to George E. Cook, County Clerk of La Salle County,

Texas, directing that the names of Henry F. Pottash, Louis R. Garcia and Agapito Delgado, III, not be printed upon the official ballot for the November 1978 general election as independent candidates for the offices of County Judge, County and District Clerk, and County Commissioner, Precinct 2, of La Salle County, Texas, respectively. The petition for the writ is denied.

The right of a person to have his name placed on the general election ballot as an independent candidate is governed by Article 13.50 of the Texas Election Code,[1] which reads in part as follows:

Subdivision 3. The name of a nonpartisan or independent candidate may be printed on the official ballot in the column for independent candidates, after a written application signed by qualified voters addressed to the proper officer, as herein provided, and delivered to him within 30 days after the second primary election day, as follows:

. . . . .

If for a county office, the application shall be signed by five per cent of the entire vote cast for Governor in such county at the last preceding gubernatorial general election, and shall be addressed to the county judge.

. . . . .

Subdivision 4. No application shall contain the name of more than one candidate. No person shall sign the application of more than one candidate for the same office; and if any person signs the application of more than one candidate for the same office, the signature shall be void as to all such applications. No person shall sign such application unless he is a qualified voter, and no person who has voted at either the general primary election or the runoff primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at either such primary election.

1. Hereafter, all references to statutory articles are to the Texas Election Code.

Subdivision 5. In addition to the person's signature, the application shall show each signer's address, the number of his voter registration certificate, and the date of signing.

Subdivision 6. Any person signing the application of an independent candidate may withdraw and annul his signature by delivering to the candidate and to the officer with whom the application is filed (or is to be filed, if not then filed), his written request, signed and duly acknowledged by him, that his signature be cancelled and annulled. The request must be delivered before the application is acted on, and not later than the day preceding the last day for filing the application. Upon such withdrawal, the person shall be free to sign the application of another candidate for the same office.

Tex.Elec.Code Ann. art. 13.50 (Vernon Supp.1978).

In the petition for writ of mandamus, relators have raised two alleged defects in respondents' application for places on the official ballot: (1) the lack of timeliness of certain signatures on respondents' application; (2) the insufficiency of addresses accompanying certain signatures on the applications. It is undisputed that most of the signatures on respondents' application were obtained before the primary election in La Salle County, Texas, on June 3, 1978. Without these signatures respondents' application would not meet the requirements of Art. 13.50, Sub. 3. The vast majority of the addresses of the signers of the application of respondents contained only the box number, post office box or general delivery in La Salle County only. Without these signatures, respondents' application would again fail to satisfy the requirements of Art. 13.50, Sub. 3.

■ Article 13.50 does not expressly provide that the signatures be obtained after the primary election. We believe the legislature intended that the signers should be qualified voters who did not participate in a primary election of any organized political party. None of the voters whose names appeared on the respondents' application were persons who voted in either the general primary election or the runoff primary election of any party in 1978. In direct contrast to Art. 13.50, Art. 13.45 specifically provides that signatures obtained before a certain date are void and that the petition may not be circulated until after a named occurrence. "The petition may not be circulated for signatures until after date of the party's precinct conventions. Any signatures obtained on or before that date are void." Tex.Elec.Code Ann. art. 13.45 (Vernon Supp.1978).

We believe that if the legislature intended the highly penal result of complete removal of respondents from the ballot, when signatures are obtained before the primary election, it would have expressly prohibited such in Art. 13.50. This Court has consistently refused to give a highly penal construction to election laws in the absence of an express statutory provision. *Orth v. Benavides*, 125 S.W.2d 1081 (Tex.Civ.App.—San Antonio 1939, writ dism'd); *King v. Fitch*, 181 S.W.2d 926 (Tex.Civ.App.—San Antonio 1944, no writ). In *King*, this Court refused to interpret the statute requiring payment of a filing fee assessment by a certain date to be a condition precedent and stated:

Before we would be justified in holding that Article 3116 should be construed as meaning that no candidate who did not pay his assessment on or before Saturday before the fourth Monday in June could have his name placed on the ballot, such meaning would have to be clearly expressed. Such a construction would give to this article a very highly penal effect. Penal statutes are to be construed strictly and not liberally. It is plain that the Legislature did intend that candidates should pay their assessments on or before the Saturday before the fourth Monday in June preceding a primary election in July, but it is equally clear that the Legislature has not prescribed the drastic penalty urged by appellee for the failure to do so.

181 S.W.2d at 928.

*La Raza Unida Party v. Dean*, 462 S.W.2d 570 (Tex.1970), cited by Relators, was a case where the petition was circulated for plac-

ing the La Raza Unida Party on the ballot before the candidates of the party had been named at its nominating convention. The Supreme Court invalidated the petition and stated:

> The statute does not expressly provide that the application to have the names of the party's nominees printed on the ballot shall be signed and filed *after* the names of the nominees have been certified to the county clerk, but that seems to us to be the only logical and reasonable interpretation; otherwise, party leaders could foist upon the signers totally unacceptable candidates and thus defeat the purpose of the application. We do not believe the legislature intended that voters should be blindfolded when asked to sign an application to have the names of a party's nominees printed on the ballot.

462 S.W.2d at 571.

In this case, the signers of the petition knew exactly whom they were supporting, since they signed on behalf of the candidate himself rather than on the party. Further, Sub. 6 of Art. 13.50, involved in the instant case, specifically provides for a procedure by which the voter may withdraw his support for the candidate whose petition he had signed. This provision appears tailored to meet precisely the problem raised and lent support to respondents' contention that the legislature never intended to limit petition signing to the 30 days after the primary. In *La Raza*, there was no such provision for withdrawing a signature.

■ Relators' contention that the addresses given by the signers do not satisfy the requirements of Art. 13.50 is without merit. La Salle County is a rural county. Only three towns have post offices. Mail is delivered on only one rural route; therefore, many qualified voters residing in La Salle County do not have a street address or a rural route address. A review of the 1978 registration list for La Salle County reveals that the addresses shown are the same as the addresses on respondents' application. Article 13.08(d), which is the provision providing how one may qualify for the primary election ballot in lieu of a filing fee, pro-

vides in part as follows: "The petition must show the following information with respect to each signer: His address (including his street address if residing in a city, and his rural route address if not residing in a city), his current voter registration certificate number . . . , and the date of signing." Tex.Elec.Code Ann. art. 13.08(d) (Vernon Supp.1978). The specificity included in Art. 13.08(d) is not contained in Art. 13.50. It would appear that a qualified voter living in a rural county not having a street address nor a rural route address would not be qualified to sign a petition under Art. 13.08(d). We doubt that the Legislature intended to disenfranchise such qualified voters under Art. 13.08(d).

As pointed out above, Art. 13.50 does not expressly require that the signatures be gathered after the primary nor that the addresses be stated with any degree of specificity. No harm has been shown as was present in *La Raza*. We hold that the respondents' application substantially complied with the Code, and their right to appear on the ballot has been established.

The writ of mandamus is denied.

CADENA, Chief Justice, dissenting.

That portion of Subdivision 4 of Article 13.50 which declares that ". . . no person who has voted at either the general primary election or the runoff primary election of any party shall sign . . ." is clear and unambiguous. The same is true of the language of Article 13.51 which requires that the following statement appear at the head of each page of the application: "I have not participated in the general primary election or the runoff primary election of any party which has nominated, at either such election, a candidate for the office for which I desire _____ (here insert the name of the candidate) to be a candidate . . . ." Tex.Elec.Code Ann. arts. 13.50, 13.51 (Vernon Supp.1978).

Unless we attribute an almost complete lack of knowledge of grammar to our legislators, we cannot escape the conclusion that the statutory scheme requires that the signatures be gathered after the general pri-

mary election or the runoff primary election, as the case may be. It is utter foolishness to require a person to state that he has not participated in an event which is not to occur until some future date.

It is true that Article 13.45 specifically provides that signatures obtained before a specific date are not to be counted, but this does not justify the conclusion that the Legislature intended language referring to a past event to be made referable to a future event. The majority opinion in this case construes the applicable provision as though it read that the ·statement of the voter should be to the effect that he has not voted in any primary election and that he will not vote in any future primary during the remainder of the voting year. If the Legislature had intended to so provide, it would have had no more difficulty in expressing such intent in Article 13.50 and Article 13.51 than it did in drafting Paragraph (b) of Subdivision 2 of Article 13.45, which provides as follows: "The following statement shall appear at the head of each page of the petition: '. . . I have not voted in any primary election . . . and I will not vote in a primary election . . . of any other party during the remainder of this voting year.' "

Since the Legislature has demonstrated its ability to choose appropriate language to demonstrate its intent that signatures may be gathered prior to the primary election in Article 13.45(2)(b), it is not inappropriate for a court to assume that our legislators knew the difference between "have not participated" and "will not participate."

I would grant the relief sought.