**Nora Mae TYLER et al., Relators,**

v.

**George E. COOK et al., Respondents.**

No. B–7910.

Supreme Court of Texas.

Oct. 13, 1978.

See also, Tex.Civ.App., 573 S.W.2d 567.

Hardy W. Hollers, Samuel D. McDaniel, Austin, for relators.

Clyde Farrell, Harlingen, Warren N. Weir, San Antonio, for respondents.

ORIGINAL MANDAMUS

BARROW, Justice.

This is a petition for writ of mandamus brought by the duly nominated and certified candidates of the Democratic Party for the offices of county judge, county-district clerk, and precinct No. 2 commissioner of La Salle County to direct the present county clerk to exclude the names of three independent candidates for the same offices from the ballot for the November general election.[1] Relators urge that the applications filed by these independent candidates do not comply with the Texas Election Code[2] in that substantially all of the required signatures were signed prior to the general primary and runoff primary elections and further they do not include the signer's proper address. We agree that the applications were signed prematurely and grant the petition for mandamus.

The right of a person to have his or her name printed on the official ballot as an independent candidate is governed by Article 13.50 of the Code which provides in part as follows:

Subd. 2—The candidate must file by the deadline provided in Art. 13.12 (6 p. m. on the first Monday in February preceding such primary) a declaration of his intent to run as an independent candidate.

Subd. 3—The candidate must deliver a written application signed by the requisite number of qualified voters to the proper officer within 30 days after the second primary election day.

Subd. 4—No person shall sign such application unless he is a qualified voter, and no person WHO HAS voted at either the general primary election or the runoff primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at either such primary election. (Emphasis added.)

1. We granted relators' motion for leave to file this proceeding after their petition for mandamus was denied by the Court of Civil Appeals for the Fourth Supreme Judicial District with Chief Justice Cadena dissenting.

2. All statutory references are to Texas Election Code Annotated.

Subd. 5—In addition to the person's signature, the application shall show each signer's address, the number of his voter registration certificate, and the date of signing.

Article 13.51 of the Code requires each page of the application to contain the following statement:

I know the contents of this application; I HAVE NOT participated in the general primary election or the runoff primary election of any party which has nominated, at either such election, a candidate for the office for which I desire (name) to be a candidate. (Emphasis added.)

Each part of the application must contain an affidavit of the person who circulated it stating that:

He called each signer's attention to the statement and read it to him before the signer affixed his signature to the application, and further stating that he witnessed the affixing of each signature, that the correct date of signing is shown on the application, and that to the best of his knowledge and belief each signature is the genuine signature of the person whose name is signed.

The record before us establishes that most of the signatures on respondents' applications were obtained before the primary election in La Salle County on May 6, 1978; and without these signatures, respondents' application would not have the number of signatures required by Art. 13.50, Subd. 3. Respondent candidates urge that no harm was done in that they have made affidavits, uncontroverted by relators, that none of the persons whose names appear on respondents' applications voted in either the subsequent general primary election or runoff primary election of any political party in 1978.

While there is no provision in the Code which expressly requires that the application be signed after the runoff primary election, other provisions require this result. The legislature expressly provided that no person shall sign such an application "who has voted at either the general primary election or the runoff primary election of

any party." The legislature emphasized the importance of this requirement by directing the voter to date his signing and further requiring an affidavit of the person who circulated the application stating that he had called the signer's attention to the statement that he had not voted as well as verifying that the correct date of signing is shown on the application. The person signing the application could not properly state that "I *have not* participated in the general primary election or the runoff primary election . . ." unless it was signed subsequent to the runoff primary election.

We have found no prior Texas case which considered this particular requirement; however in *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), the United States Supreme Court construed Article 13.50 as requiring that the application be signed by the qualified voters within thirty days after the runoff primary election.

In *La Raza Unida Party v. Dean,* 462 S.W.2d 570 (Tex.1970), the party sought mandamus to require the names of its candidates to be placed on the ballot under Article 13.54 of the Code. This Court denied the writ for the reason that the party had obtained the required signatures prior to its convention. Article 13.54 then provided in part that all nominations made by the county conventions be certified to the county clerk and be printed on the official ballot "provided, a written application for such printing shall have been made to the county judge, signed and sworn to by three per cent (3%) of the entire vote cast in such county at the last general election." This Court said:

The statute does not expressly provide that the application to have the names of the party's nominees printed on the ballot shall be signed and filed AFTER the names of the nominees have been certified to the county clerk, but that seems to us to be the only logical and reasonable interpretation; otherwise, party leaders could foist upon the signers totally unacceptable candidates and thus defeat the purpose of the application.

It was also said that such an interpretation served the further beneficial purpose of assuring that persons asked to sign a 13.54 petition will, more often than not, have available to them the names of all other candidates for the same offices, and will be in a better position to make an intelligent decision as to whether they should sign.

This beneficial purpose is served by the legislature's requirement that these applications be signed after the primary runoff election. Also, such requirement furthers the legitimate purpose of encouraging full voter participation in the primary elections and minimizing interference with and disruption of that process. In *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the United States Supreme Court recognized and upheld valid state objectives accomplished by placing reasonable limitations on the availability of the general ballot to independent candidates.

The legislature has implicitly required that the application to place the name of an independent candidate on the general ballot be signed by a qualified voter after the runoff primary election. Otherwise, the signer could not state that he HAD NOT voted in the general primary election or the runoff primary election of any party for an office for which a nomination was made at either such primary election. It is conceded by respondent candidates here that substantially all of their signatures were obtained prior to the primary election. Since respondent candidates were not nominated in accordance with the provisions of this Code, their names should not appear on the official ballot. Article 6.01. Relators as duly nominated and certified candidates for these same offices are entitled to the writ prayed for in this situation. *Thiel v. Harris Cty. Democratic Exec. Com.,* 534 S.W.2d 891 (Tex.1976). It is unnecessary to consider the question of whether the signers complied with the address provisions of Article 13.50.

Accordingly, the writ of mandamus will issue directing respondent George E. Cook to exclude the names of Henry F. Potthast,

Luis R. Garcia, and Agapito Delgado, III from the official ballot for the 1978 general election. In view of the shortness of time before the ballot must be printed, no motion for rehearing will be entertained.

