**George PIERCE, Relator,**

v.

**Joyce PETERS et al., Respondents.**

**No. 16515.**

Court of Civil Appeals of Texas,
San Antonio.

April 2, 1980.

Lamoine Holland, San Antonio, for relator.

Mary P. Robards, James L. Branton, San Antonio, for respondents.

OPINION

CADENA, Chief Justice.

Relator, George Pierce, seeks a writ of mandamus ordering Respondents, Joyce Peters, in her capacity as Chairman of the Bexar County Democratic Executive Committee and ex-officio member of such Executive Committee, the Bexar County Democratic Executive Committee and the Bexar County Democratic Primary Committee, to remove the name of Respondent, Charles R. Maddox, from the official ballot to be used in the Democratic Party Primary Election to be held in Bexar County on Saturday,

May 3, 1980, as a candidate seeking the nomination of the Democratic Party for the office of State Representative, District 57–G, from Bexar County. Relator is also a candidate seeking the nomination of the Democratic Party for such office in the May Primary Election.

Article 1735a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1980), authorizes courts of civil appeals to issue mandatory writs to compel officers of a political party to perform duties imposed on them by law in connection with the holding of any primary election. State Representative District 57–G lies wholly within Bexar County, which is within this Court's Supreme Judicial District.

Respondent, Charles R. Maddox, timely filed his application with Respondent, Joyce Peters, to have his name placed on the official ballot for the May 3, 1980, general primary election as a candidate for the Democratic nomination for the office of State Representative, District 57–G. His application, instead of being accompanied by the filing fee of $400.00 specified in Article 13.08(c), Tex.Elec.Code Ann. (Vernon Supp.1980), was accompanied by the petition provided for in Subsection (d) of Article 13.08.

Under Article 13.08(d), Maddox, in lieu of the payment of a filing fee, was required to file a petition signed by voters eligible to vote for the office for which he sought to run equal in number to at least two per cent of the number of votes cast within that district for the Democratic Party's candidate for governor in the 1978 gubernatorial general election. Relator does not here contend that the number of signatures appearing on the Maddox petition fell short of the required number, but contends that the petition does not conform to the statutory requirements in that the petition does not reflect the city in which the parties signing the petition reside.

The first sentence of the seventh paragraph of Article 13.08(d) reads as follows:

The petition must show the following information with respect to each signer: His address (including his street address if residing in a city, and his rural route address if not residing in a city), his current voter registration certificate number (also showing the county of issuance if the office includes more than one county), and the date of signing.

Except in a handful of instances, the petition in the instant case reflects only the name of the signer, a street address, without indicating the city in which such street address is located, the current voter registration number of the signer, and the date of signing. If the signatures which do not indicate the city in which the signer resides are disregarded, the number of signatures on the Maddox petition falls far short of the number required by statute.

We agree with the contention that "address" has more than one meaning, and that the term is not necessarily synonymous with "residence" or "domicile." In fact, when used as a verb, it may mean "to make a speech to." Necessarily, then, the meaning of a requirement that a person give his address must be determined from the context in which the term is used and the purpose for imposing the requirement.

■ It is clear that the persons signing a petition must be "qualified voters eligible to vote for the office for which the candidate is running." Tex.Elec.Code Ann. art. 13.-08(d) (Vernon Supp.1980). As applicable to this case, the persons signing the petition are required to be qualified voters eligible to vote in the election for State Representative, District 57–G. That is, the signer must be a resident of territory included within that district. The conclusion 's inescapable that the word "address" as used in the provision with which we are here concerned refers to the residence of the voter and not merely to the place, such as a post office box, where he receives his mail.

According to Webster's New International Dictionary (2d ed. 1959), one of the definitions of address is: "The directions for delivery of a letter, package, etc., especially as written, stamped, or printed on an outer surface; . . . the name or description of a place of residence, business, etc., where

a person may be found or communicated with." *Id.* at 30. As used in Article 13.-08(d), the word refers to a description of the voter's place of residence where he "may be found or communicated with." Tex.Elec. Code Ann. art. 13.08(d) (Vernon Supp.1980).

█ It is clear that the legislature intended that something more be given than a post office box or a mere recital of the city of the voter's residence. There is no reason to believe that language clearly indicating that a description of an address which designates no more than the city in which the voter resides is not sufficient, contemplates that the giving of a street number, without a designation of the city, would be sufficient. "201 Main Street" gives even less information than "San Antonio, Texas." If an address limited to designation of a city is considered insufficient, there is no basis for holding that the recital of a street number without specifying the city in which the street is located is sufficient.

The statutory language is specific. The petition is required to show the voter's "address (including his street address if residing in a city, and his rural route address if not residing in a city), . . . ." Tex. Elec.Code Ann. art. 13.08(d) (Vernon Supp. 1980).

In *Alexander v. Firemen's Insurance Co.*, 317 S.W.2d 752 (Tex.Civ.App.—Waco 1958, no writ), a policy which included protection against loss occasioned by aircraft recited: "Loss by aircraft shall include direct loss by falling aircraft, or objects falling therefrom, . . . ." 317 S.W.2d at 754. In rejecting the insurer's contention that the recital concerning losses by aircraft which were included in the policy excluded all other losses caused by aircraft, the Waco Court held that the words "shall include" are "terms of enlargement and not of limitation," and did not have the effect of restricting the coverage to loss by falling aircraft or objects falling from aircraft. 317 S.W.2d at 755.

In *Peerless Carbon Black Co. v. Sheppard*, 113 S.W.2d 996, 997 (Tex.Civ.App.—Austin 1938, writ ref'd), the Court said:

The words 'includes' and 'including' are regarded by the authorities as being identical or equivalent to each other; and the authorities uniformly hold that unless the context in which such words are used requires, they are never regarded as being identical with or equivalent to 'mean and include,' nor with such less elastic words and terms as 'meant,' 'meaning,' or 'by which is meant.' . . . [W]hile the word 'including' is susceptible of different shades of meaning, 'it is generally employed as a term of enlargement and not a term of limitation, or of enumeration.'

The statute does not recite, "address" means "street address." It says, instead, that "address" includes the street number. That is, the street number is a part of the address which is required in the case of a voter who resides in a city. There is no basis for an interpretation of "address (including his street address if residing in a city, . . .)" as meaning "address (limited to street address if residing in a city, . . .)," or as meaning, "address (by which is meant his street address if residing in a city . . .)."

According to Webster's New International Dictionary (2d ed. 1959), "include" means:

1. To confine; shut up; enclose; as, the nutshell *includes* the kernel.

2. To comprehend or comprise, as a genus the species, the whole a part, an argument or reason the inference; to take or reckon in; to contain; embrace; as, this volume *includes* the essays; to and *including* the tenth.

*Id.* at 1258.

"The nutshell *includes* the kernel" does not mean "The nutshell is the kernel," or "nutshell means kernel," or "the kernel is the nutshell." Similarly, "The volume includes the essays" does not mean, "The volume includes only the essays."

The statute, in requiring that the petition show the number of the signer's current voting registration, expressly requires that the county of issuance be shown if the

office includes more than one county. The clear implication is that the county of issuance need not be shown where the office does not include more than one county. Where the legislature intended to limit the instances where the county must be shown it experienced no difficulty in expressing such intention. The requirement that the voter give his address, including his street address if he resides within a city, is not so limited, nor is there any basis for interpreting the statute as requiring a designation of the city only where the office includes more than one city or more than one county.

We conclude that the petitions filed by Respondent do not comply with the mandatory provisions of Article 13.08(d). This conclusion is supported by the results reached in *Shields v. Upham*, 597 S.W.2d 502 (Tex.Civ.App.—El Paso, 1980), and *Gray v. Vance*, 567 S.W.2d 16 (Tex.Civ.App. —Fort Worth 1978, no writ).

The Relator's application for writ of mandamus is granted. Respondents, Joyce Peters (Chairman of the Bexar County Democratic Executive Committee), the Bexar County Democratic Executive Committee, and the Bexar County Democratic Primary Committee are directed to remove the name of Respondent, Charles R. Maddox, as a candidate for the nomination to the office of State Representative, District 57–G, Bexar County, Texas, from the official ballot to be used at the Democratic General Primary to be held in Bexar County, Texas, on May 3, 1980; including the official ballot to be used in the absentee voting conducted in connection with such general primary election.

No motion for rehearing will be entertained.

MURRAY, J., took no part in the disposition of this case.