**Harmon HOOT, Relator,**

v.

**Edwin E. BREWER, County Judge, Respondent.**

**No. 01–82–0583–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 3, 1982.

Frank L. Mauro, Wommack, Denman & Mauro, Lake Jackson, for relator.

Charles Stevenson, Asst. Dist. Atty., Angleton, for respondent.

## OPINION

DUGGAN, Justice.

This is an original mandamus proceeding in this court wherein relator seeks a writ of mandamus to compel the respondent, who is the County Judge of Brazoria County, Texas, to certify to the County Clerk of Brazoria County, Texas, relator's name to be put on the general election ballot in November, 1982, as a candidate for the office of County Judge.

The jurisdiction of this court has been invoked pursuant to Tex.Elec.Code Ann. art. 13.41 (Vernon Supp.1982) and Tex.Rev.

Civ.Stat.Ann. arts. 1735a and 1823. The jurisdictional requirements have been demonstrated.

Relator's position may be summarized briefly as follows: He maintains that he has met the statutory requirements for having his name printed on the official ballot for the general election in November, 1982, in the column for independent candidates. He maintains further that he has complied with Tex.Elec.Code Ann. art. 13.50 (Vernon Supp.1982) by a) providing the County Judge with his Notice of Intent to Run as an Independent Candidate within the time frame allowed under Tex.Elec.Code Ann. art. 13.12 (Vernon Supp.1982), and b) providing a written application signed by 686 eligible Brazoria County voters who had not voted in the May 1, 1982 primary election. Relator asserts further that his application exceeded the statutory requirement of 500 eligible voters by 186 signatures, and that each step was performed within the statutory time periods. No primary run-off election for the position of County Judge was required.

Relator asserts further that he has communicated with respondent on five separate occasions between July 12, 1982 and date of filing of his application for writ of mandamus with no response out of respondent as to why relator's name has not been certified. In this connection he says further that unless respondent puts relator's name on the ballot on or before September 18, 1982, relator may lose his right to run. According to the provisions of Tex.Elec. Code Ann. art. 13.56(f) (Vernon Supp.1982) if relator is declared ineligible before the 44th day before election day (November 2, 1982), his name may not be placed on the ballot. Finally, relator asserts that in the event that respondent decides on the eve of the 44th day prior to election day that relator's application does not meet the statutory requirements for gaining a place on the ballot, there will be no time for relator to obtain a judicial determination of his right to have his name on the ballot. Regarding the likelihood that this situation could occur, relator points to the fact that, if his name is on the ballot in November, he will be an opponent of the respondent for the very position which respondent now holds.

In response to all of the foregoing respondent's stance may be summarized briefly as follows:

Before a writ of mandamus will issue, relator must have a clear legal right to performance of the act he seeks to compel. The duty of the officer sought to be compelled must be one clearly fixed and required by the law, or the writ will not issue.

Further, says respondent, the Court of Appeals has no authority to issue writs of mandamus unless the facts are established without dispute.

Provisions of the Election Code concerning the contents of an independent candidate's application to be placed on the ballot at a general election are mandatory, and must be strictly complied with.

Tex.Elec.Code Ann. art. 13.50, (Vernon Supp.1982) contains the following provisions concerning the requisites of an application of an independent candidate to be placed on the ballot:

Subdivision 4. No application shall contain the name of more than one candidate for the same office; and if any person signs the application of more than one candidate for the same office, the signature shall be void as to all such applications. No person shall sign such application unless he is a qualified voter, and no person who has voted at either the general primary election or the run-off primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at either such primary election. An application may not be circulated for signatures until the day after the general primary election day, or if a runoff primary election is held for the office sought by the applicant, until the day after the runoff primary election day. A signature obtained before the day an application may be circulated is void.

Subdivision 5. In addition to the person's signature, the application shall show each

signer's address, the number of his voter registration certificate, and the date of signing.

Respondent contends further that the names of those persons who signed relator's application prior to the date of the primary runoff election are not valid and may not be counted. Respondent's key position in challenging the sufficiency of the application's conformity with the requirements of the Election Code is that such requirements are mandatory, that relator must strictly comply, and that the applications must contain a sufficient address. Respondent asserts that 133 of the signatures are invalid because they were obtained before June 6, 1982; further, that 221 more of the signatures are invalid because of incomplete address. Quite obviously, says respondent, the applications contained only 268 valid signatures, far short of the required 500 valid signatures.

■ Coming to grips now with the crucial points raised in this original proceeding this court compliments counsel for both parties on their able briefs. We recognize first, as respondent urges, that before a writ of mandamus will issue, relator must have a clear legal right to performance of the act he seeks to compel; further, that the duty of the officer sought to be compelled must be one clearly fixed and required by the law, or the writ will not issue. *Oney v. Ammerman,* 458 S.W.2d 54 (Tex. 1970); *Bozarth v. City of Denison,* 559 S.W.2d 378 (Tex.Civ.App.—Dallas 1977, no writ); *Blanchard v. Fulbright,* 633 S.W.2d 617 (Tex.App.—Houston [14th Dist.] 1982, no writ). In addition, the authorities are clear that the Courts of Appeals have no authority to issue writs of mandamus unless the facts are established without dispute. *Bozarth,* supra; *Bigham v. Sutton,* 565 S.W.2d 561 (Tex.Civ.App.—Austin 1978, no writ); *Donald v. Carr,* 407 S.W.2d 288 (Tex. Civ.App.—Dallas 1966, no writ). We are mindful also that, whereas provisions of election laws relating to voters are to be construed as directory, the provisions of election laws governing the requirements of candidates are mandatory. *McWaters v.*

*Tucker,* 249 S.W.2d 80 (Tex.Civ.App.—Galveston 1952, no writ); *Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976, no writ); *Shields v. Upham,* 597 S.W.2d 502 (Tex.Civ.App.—El Paso 1980, no writ).

## VALIDITY OF SIGNATURE DATES BEFORE JUNE 6, 1982

■ By respondent's own figures, there were 133 signatures falling into this category. No fact issue whatever is involved in reaching that determination. In concluding whether the signatures on relator's application should be counted if the signature date is prior to June 6, 1982, the date of the run-off election, but after the date of the general primary, Tex.Elec.Code Ann. art. 13.50 (Vernon Supp.1982) is determinative. We quote therefrom as follows:

> An Application may not be circulated for signatures until the day after the general primary election day, or *if a run-off primary election is held for the office sought by applicant,* until the day after the run-off primary election day. (Emphasis added.)

The emphasized language is the heart of the matter because it is uncontroverted that there was no runoff election for the office of County Judge of Brazoria County in 1982. We hold, therefore, that the questioned 133 signatures obtained before June 6, 1982 are valid and should be added to the 268 signatures recognized as valid by respondent.

In so holding we not only follow the clear wording of the statute, but we have the benefit of Tex.Atty.Gen.Op. No. DAD–49 (1982) which states the question as follows at page 1.

> 1. Under Subdivision 4 of Article 13.50, is it permissible to have an application to run as an independent candidate that contains signatures dated before the run-off primary election if there is no primary runoff election for the particular office for which a person desires, to run as an independent candidate.

At page 2 the answer to such question is given as follows:

> "1. V.A.T.S. Election Code, art. 13.50, subd. 4, states, in part:

An application may not be circulated for signatures until the day after the general primary election day, or if a runoff election is held for the office sought by the applicant, until the day after the runoff primary election day. A signature obtained before the day an application may be circulated is void. Therefore, the answer to your first question is yes. Of course, no signatures could be counted if they were dated before the day after the general primary election.

### SUFFICIENCY OF ADDRESS

■ Respondent approaches this matter by saying that the question raised is whether or not an address is sufficient if it fails to include the city in which it is located. Going further, he asserts that there are 221 insufficient addresses which fall into two categories: (1) no address listed, (2) no city listed. He says that those signatures with no address listed at all are clearly insufficient and with this we agree. But he does not say in his brief how many of these signatures there are so we must turn to his verified exhibit C attached to his original answer to petition for writ of mandamus. Exhibit C is Mike Sandel's letter to respondent dated July 8, 1982 wherein Sandel, as Director of the Data Processing Department of Brazoria County, summarized the errors found in relator's application. In the category of "Incomplete Address" he lists 221 signatures. Thus, to determine how many signatures are incomplete because no address is listed, one must look to relator's application, also attached to respondent's verified answer. When this is done, it is apparent that no more than five or six such signatures are involved. These are found at pages 7, 15, 46, 47 and 55 of relator's application. On the assumption most favorable to respondent, there are six such signatures with no address whatever shown. This then leaves 215 signatures which provide the crucial issue before this court. Is an address which fails to include the city in which it is found sufficient or insufficient as a matter of law?

Subdivision 5 of article 13.50 requires that in addition to a signature:

... the Application shall show each signer's address, the number of his voter registration certificate and the date of signing.

■ Relator urges that the quoted language is broad and does not require specificity in the address provided by a voter who signs an independent candidate's application. Respondent candidly admits that counsel has been unable to find a single case dealing with the meaning of "address" as it appears in Tex.Elec.Code Ann. art. 13.50, subd. 5, (Vernon Supp.1982). Relator cites *Tyler v. Cook,* 573 S.W.2d 567 (Tex. Civ.App.—San Antonio 1978), rev'd on other grounds, 576 S.W.2d 769 (Tex.1978). In *Tyler,* party candidates for various county offices sought by mandamus to prevent the printing of the names of three independent candidates upon the official general election ballot. The addresses on the independent candidates' applications were challenged because they did not contain street addresses or rural route addresses. By reviewing the 1978 Voter's Registration List for the County involved, the San Antonio Court of Civil Appeals observed that the addresses for the signers of the applications shown on the Voter's Registration List were the same as the addresses the members of the Court noted on the applications of the independent candidates.

Respondent, in turn, cites and discusses numerous cases wherein the address requirements under another statute, article 13.08(d), have been construed. He points out that all such cases have held that the recital in a nominating petition of the street address of a signator, without specifying the city in which the street was located, is insufficient as a matter of law. *Shields v. Upham,* supra; *Pierce v. Peters,* 599 S.W.2d 849 (Tex.Civ.App.—San Antonio 1980, no writ); *Gray v. Vance,* 567 S.W.2d 16 (Tex. Civ.App.—Dallas 1978, no writ).

We hold that there are an additional 215 valid signatures on relator's application where such signatures have given street address, P.O. box number or rural route

number but have not designated the city or town. In reaching this conclusion we have again been aided by Tex.Atty.Gen.Op. No. Dad–49 (1982) concerning the sufficiency of recitals in the application of a non-partisan or independent candidate for a place on the general election ballot. Looking to that opinion in paragraph "2" of page 1 we find the following question posed:

2. Under Subdivision 5 of Article 13.50, what amount of information is needed to satisfy the requirement of a "signer's address"? If the other information given, along with the list of registered voters in the county, is sufficient to identify a signer as a qualified voter in a particular county, does the address satisfy the requirements of the statute? For example, if a person's street address and the voter's registration number are listed, but there is no city designation, can the signature be counted if the signer's name can be found on the voter's registration list which will provide the city he lives in?

The answer to the posed question is found at pages 2, 3 and 4 of the opinion as follows:

2. In *Tyler v. Cook*, 573 S.W.2d 567, 570 (Tex.Civ.App.—San Antonio 1978), reversed on other grounds 576 S.W.2d 769 (Tex.1978), the court said: "As pointed out above, art. 13.50 does not expressly require ... that the addresses be stated with any degree of specificity."

The same court, however, in a decision construing art. 13.08(d), stated:

It is clear that the legislature intended that something more be given than a post office box or a mere recital of the city of the voter's residence. There is no reason to believe that language clearly indicating that a description of an address which designates no more than the city in which the voter resides is not sufficient, contemplates that the giving of a street number, without a designation of the city, would be sufficient. '201 Main Street' gives even less information than 'San Antonio, Texas'. *Pierce v. Peters,* 599 S.W.2d 849, 851 (Tex.Civ.App.—San Antonio, 1980, no writ).

A comparison of art. 13.098(d) and art. 13.50, subd. 5, will show that the statutory language construed in *Pierce, supra,* is somewhat more specific than the statutory language in question.

Art. 13.08(d) provides, in part:

... The petition must show the following information with respect to each signer: His address (including his street address if residing in a city, and his rural route address if not residing in a city), his current voter registration certificate number (also showing the county of issuance if the office includes more than one county), and the date of signing...

Art. 13.50, subd. 5, provides:

In addition to the person's signature, the application shall show each signer's address, the number of his voter registration certificate, and the date of signing. The legislative purpose of both of the above-cited statutes is to allow verification of signatures. Furthermore, the language used is mandatory, not directive. "Provisions of election laws governing what is required of candidates are mandatory." *Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976, no writ). Therefore, it is my opinion that for a signature on an application pursuant to art. 13.50 of the Election Code to be valid it must be accompanied by all four of the required items of information. However since the statutory language in question is not specific as to what detail is required in the address, I am of the opinion that it is unnecessary to reject a signature for a technical deficiency in the recital of the address, where the recital is sufficient for the purpose of verifying the signature. The El Paso Court of Civil Appeals, construing art. 13.08(d), said, "The Election Code does not require just a petition which may be verified. It requires specified information ..." *Shields v. Upham,* 597 S.W.2d 502, 504 (Tex.Civ.App.—El Paso 1980, no writ). This applies as well to independent candidates' applications under art. 13.50. However, the legislature has apparently chosen to be somewhat less specific in its requirements under art. 13.50.

## SUMMARY

An application of an independent candidate for a place on the general election ballot must comply with the mandatory provision of V.A.T.S. Election Code, art. 13.50, subds. 4 and 5. Each signature on the application must be accompanied by the signer's address, the number of his voter registration certificate, and the date of signing. The omission of any one of these items is fatal to that signature. *The language of art. 13.50, subd. 5, does not require that the signer's address be stated with any certain degree of specificity. An otherwise valid signature should not be rejected when the recital of the signer's address is sufficient for the purpose of verification.* (Emphasis added.)

Respondent's Exhibit C at page 2 thereof recognizes 268 valid signatures. To this figure we now add the 133 signatures obtained after the general primary election but prior to June 6, 1982 and the 215 signatures disallowed by respondent because of the alleged insufficient address. By this calculation we find that relator's application included 616 valid signatures and that he is entitled to the relief sought.

## DUTY AND RESPONSIBILITY OF COUNTY JUDGE

■ Tex.Elec.Code Ann. art. 13.52 (Vernon Supp.1982) provides what the County Judge is to do upon the applicant's having fulfilled the requirements of the article.

Upon receipt of an application which conforms to the above requirements ... the county judge *shall* issue his instruction to the ... county clerk of the county directing that the name of the candidate in whose favor the application is made shall be printed on the official ballot in the independent column under the title of the office for which he is a candidate.... (Emphasis added.)

We hold, therefore, that the election code is mandatory rather than directive as to what the county judge shall do once he receives an application meeting the statutory requirements.

The writ of mandamus will be issued ordering respondent, Edwin E. Brewer, County Judge of Brazoria County, Texas, to certify to the County Clerk of Brazoria County, Texas the name of relator, Harmon Hoot, as a candidate for the office of County Judge of Brazoria County, Texas. His name is to be put on the general election ballot as soon as practicable, but, in any event, prior to September 18, 1982.

DYESS, J., joins in this opinion.

DOYLE, J., dissents.

DOYLE, Justice, dissenting.

I respectfully dissent from the majority opinion ordering that the name of the relator, Harmon Hoot, be placed on the general election ballot as an independent candidate.

It is undisputed that the provisions of the Election Code with reference to the placing of the names of independent candidates upon the general election ballot are mandatory and must be strictly complied with. *McWaters v. Tucker,* 249 S.W.2d 80 (Tex. Civ.App.—Galveston 1952, no writ); *Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.— Dallas 1976, no writ).

The respondent has raised several irregularity issues in connection with the relator's application which warrant serious consideration. Two of such issues concern the sufficiency of addresses appearing on the application and the adequacy of the affidavit required by article 13.51. It is undisputed that if the challenged signers' addresses and affidavits are not allowed to stand, the relator's application would not have the required signatures.

The Election Code, article 13.50, Subdivision 5, provides in part, that "the application shall show each signer's address, ...." The Legislature has not defined "address" in the article. Therefore, we are required to give the word its meaning based on ordinary usage. The addresses under challenge in the case before us fail to include the city in which a number of the signers live. In *Tyler v. Cook,* 576 S.W.2d 769 (Tex.Sup.Ct.1980), the Texas Supreme

Court did not rule on a similar address challenge, finding it unnecessary in order to decide the question before it. However, I can not conceive of an address as employed in the ordinary course of usage, as being complete and meaningful, that gives only a *house number* or *post office box number*, and omitting all reference to a city. The cases that have considered the address question under Article 13.08 of the Elec.Code, have uniformly held that the omission of the name of the city in a signer's address is fatal to that name. *Shields v. Upham,* 597 S.W.2d 502 (Tex.Civ.App.—El Paso 1980, no writ); *Gray v. Vance,* 567 S.W.2d 16 (Tex. Civ.App.—Fort Worth 1978, no writ); *Pierce v. Peters,* 599 S.W.2d 849 (Tex.Civ. App.—San Antonio 1980, no writ). Under the rationale found in these cases, I fail to see how the address requirement would be interpreted differently for a signer under Article 13.50 than from one under Article 13.08. With or without the specificity as to address set out in Article 13.08(d), I think we are required to give the word "address" its ordinary meaning until the Legislature defines it.

As to a signer of an application under Article 13.50 of the Election Code making an affidavit to the effect that he has not "voted at either the general primary election or the runoff primary election of any party," *when the runoff primary election is yet to come,* we are confronted with an impossible situation. No signer can make such an affidavit under the present wording of the statute. In *Tyler v. Cook,* supra, the dissent of Chief Justice Cadena, of the San Antonio Civil Appeals Court in 573 S.W.2d 567 at page 571, summarizes my position on the affidavit. He states:

> Unless we attribute an almost complete lack of knowledge of grammar to our legislators, we cannot escape the conclusion that the statutory scheme requires that the signatures be gathered after the general primary election or the runoff primary election, as the case may be. It is utter foolishness to require a person to state that he has not participated in an event which is not to occur until some future date.

In reversing *Tyler v. Cook,* supra, Justice Barrow of the Texas Supreme Court reasoned similarly.

I would deny the mandamus and order the cause dismissed.