DALLAS COUNTY, By and Through its COMMISSIONERS COURT, and County Judge Lee F. Jackson, Commissioner Jim Jackson, Commissioner Nancy E. Judy, Commissioner John Wylie Price, and Commissioner Chris V. Semos, Relators,

v.

The Honorable Richard MAYS, Judge, 204th Judicial District Court, Dallas County, Texas, the Honorable Ron Chapman, Judge, Criminal District Court, Dallas County, Texas, the Honorable Pat McDowell, Judge, Criminal District Court No. 5, Dallas County, Texas, the Honorable Frances Maloney, Judge, Criminal District Court No. 4, Dallas County, Texas, the Honorable Gary R. Stephens, Judge, Criminal District Court No. 3, Dallas County, Texas, the Honorable John Ovard, Judge, 265th Judicial District Court, Dallas County, Texas, Respondents.

No. 05–87–01182–CV.

Court of Appeals of Texas, Dallas.

Jan. 22, 1988.

Rehearing Denied Feb. 29, 1988.

Earl Luna, Dallas, for relators.

Kerry W. Young, Corinne A. Mason, Dallas, for respondents.

Sharon L. Caldwell, Dallas, for respondent Frances Maloney.

Before DEVANY, McCLUNG, and HECHT, JJ.

DEVANY, Justice.

Relators, Dallas County, by and through its Commissioners Court, and its individual Commissioners seek a writ of mandamus against six district courts, respondents.

## ACTION PRAYED FOR BY COMMISSIONERS

First, relators request this Court to direct all respondents to set aside certain October 21, 1987 *show cause* orders that respondents issued directing three of the Commissioners to show cause why they should not be held in contempt for failing to follow earlier orders issued in May and June, 1987 by respondents *setting* the salaries of respondents' court reporters. Second, relators request this Court to direct respondents to set aside a later set of orders dated October 27, 26, and 28, respectively, *directing* relators to order certain salaries to be paid to their court reporters. For the reasons stated below, we deny the petition for writ of mandamus as to relators' first request, and conditionally grant the petition for writ of mandamus as to relators' second request.

## BACKGROUND

Section 52.051(a) of the Texas Government Code provides that "[a]n official district court reporter shall be paid a salary set by the order of the judge of the court." [1] Section 52.051(c) requires that an

1. We note that the Commissioners Court filed a petition for declaratory judgment in the 298th Judicial District Court on October 26, 1987. In that suit, the Commissioners Court seeks a declaration that section 52.051 of the Government Code is unconstitutional to the extent that it

order increasing an official court reporter's salary be submitted to the Commissioners by September 1 of each year. Since Dallas County is on an October 1 fiscal year, the due date for submitting the salary increase is June 1. TEX.REV.CIV.STAT.ANN. art. 1644e, § 4 (Vernon Supp.1987). On the following dates, respondents signed orders setting their respective court reporters' salaries for fiscal year 1988 by the greater of either five percent or the combined market and merit adjustments given other county employees:

May 28, 1987
June 1, 1987
May 29, 1987
May 29, 1987
June 1, 1987
May 29, 1987

Then, on October 21, 1987, respondents issued *show cause* orders directing three of the Commissioners to appear before them and show cause why they should not be held in contempt for voting against the full salaries for the court reporters which respondents had set in their May and June orders, which action prevented the authorization by the Commissioners Court to enable the Dallas County Treasurer to disburse the funds in the amounts set by the respondents in the salary orders. When the motion for leave to file this petition for writ of mandamus was filed in this Court and granted, we stayed any hearing on or ruling by respondents regarding contempt by any of relators pending this Court's determination of relators' petition for writ of mandamus.

### THE SHOW CAUSE ORDERS

Relators request us to set aside the show cause orders because the three Commissioners should not be held in contempt for violating the salary orders. Relators contend that the salary orders do not *direct* them to do anything and, therefore, cannot be the basis for contempt. Relators fur-

ther argue that, since they were not parties to or participants in the salary orders, relators should not be held in contempt for voting against the salary increases set forth in those orders.

We agree that those salary orders do not direct relators to take any action. Each of the May and June orders provides that the respective court reporter's salary shall be a sum equal to the salary paid that court reporter in fiscal year 1987 plus an increase equal to five percent or the combined market and merit adjustments given other county employees. The orders do not direct relators to *pay* the increase in salaries. However, because of prevailing case law, we do not agree that a writ of mandamus from this Court is the remedy available to relators.

"Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). As a general rule, to obtain mandamus a relator must demonstrate three things: (1) a clear right to the relief; (2) a clear violation of a legal duty or abuse of discretion by the respondent; and (3) the lack of any other adequate remedy. *See id.; Hoot v. Brewer*, 640 S.W.2d 758, 761 (Tex.App.—Houston [1st Dist.] 1982, orig. proceeding); *see also Green v. Heckler*, 742 F.2d 237, 241 (5th Cir.1984). With respect to their request that the show cause orders be vacated, we hold that relators have failed to satisfy these three requirements.

First of all, relators have failed to show that respondents have violated a duty or abused their discretion in issuing the show cause orders. District judges have authority to issue show cause orders on their own motions. *See Ex parte Sanchez*, 703 S.W. 2d 955 (Tex.1986) (implicitly approving issuance by a court of appeals on its own

circumscribes the authority of the Commissioners Court conferred by article VIII, section 1-a and section 9 of the Texas Constitution to set the tax rates for the four constitutional funds set out therein. The Commissioners Court also seeks a declaration that the May and June or-

ders, which are based upon section 52.051 and which set the salaries of the court reporters, are null and void. The issues in that lawsuit are not before us and we express no opinion as to the constitutionality of section 52.051.

motion of a show cause order directed to a court reporter in *In re Sanchez*, 698 S.W. 2d 462, 464–465 (Tex.App.—Corpus Christi 1985, orig. proceeding)). Only in extraordinary circumstances would the mere issuance of a show cause order constitute an abuse of discretion. Even though we hold hereinafter that relators have not acted in contempt of the salary orders, we do not conclude that respondents' issuance of their show cause orders was a violation of a legal duty or an abuse of discretion. By failing to make this required showing, relators have failed to show a clear entitlement to mandamus.

Secondly, relators have failed to show the lack of any other adequate remedy. Specifically, relators have failed to show why they would not have an adequate remedy in habeas corpus. In *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824 (1960), the supreme court considered a similar procedural situation. There, the trial court had granted a temporary injunction restraining the Missouri–Kansas–Texas Railroad Company of Texas and its agents, officers, servants, and employees from willfully blocking or obstructing Alamo Street in the City of Dallas for more than five minutes at any one time. Upon motion filed by the original applicant for the temporary injunction, the trial court held Deramus, who was the president of the railroad, and others in contempt for violating the temporary injunction by permitting the Alamo Street crossing to be blocked by a standing train for a period of time in excess of five minutes. The trial court assessed both a fine and confinement in the county jail but suspended the punishment for 120 days. The purpose of the suspension was to enable the railroad to begin construction of an underpass at the Alamo Street crossing. The railroad did, in fact, begin construction of the underpass within 120 days. *Id.* 333 S.W.2d at 826.

Then, more than 120 days after the entry of the contempt judgment, the trial court set a date to consider the parties' sentences as a result of the earlier contempt judgment. Before that date, Deramus filed a motion for leave to file a petition for writ of mandamus in the supreme court, requesting that court to vacate and expunge the contempt judgment against him and to dismiss the contempt proceedings. *Id.* 333 S.W.2d at 826–27.

In his petition to the supreme court, Deramus argued that the writ of mandamus should be available to him under the circumstances there and that the alternate remedy of habeas corpus was inadequate. He argued that the remedy was inadequate because it would necessitate his arrest and confinement, at least temporarily, until the application for relief could be presented to the supreme court, thereby entailing the stigma of this procedure. The supreme court responded, however, that this argument would exist in every case of contempt. The court went on to state that the validity of a contempt judgment can be attacked only collaterally by way of habeas corpus. *Id.* 333 S.W.2d at 827. Then, the court stated as follows:

> We do have authority to correct the action of a trial judge in the abuse of his discretion, or in violation of his clear duty under the law, where there is no adequate remedy by appeal, and even to direct a trial judge to enter an order of dismissal where that is the only proper judgment that can be rendered on undisputed facts.... Therefore this matter becomes not so much a question of jurisdiction to entertain this application for mandamus, but rather the consideration of a long-established policy. *Nevertheless, in view of the unbroken line of authorities we are reluctant to depart from a judicial path so well landmarked, especially so since the claimed inadequacy of habeas corpus in this instance is one common to all cases where escape is sought from the penalties of a contempt judgment. This in itself, we think, is sufficient justification for our refusal of this application. To do otherwise would completely change the procedure long followed in this State and allow in every case an attack on the order of contempt by way of mandamus.* Moreover, the presumption obtains that a judge will not attempt to enforce a void order and direct con-

finement thereunder. He has not yet acted and since the order for these parties to appear was issued by the trial judge some three months after the termination of the period of suspension, and the condition of the suspension, namely, commencement of construction work on the grade separation, has been complied with, it is entirely possible that he contemplates no enforcement of the penalties assessed.

*Id.* (Emphasis added.)

In the instant case, as in *Deramus,* habeas corpus provides relators with an adequate remedy. To grant relators' petition for writ of mandamus would allow any party facing a contempt hearing to mount a preliminary attack against the basis for contempt in the appellate court. As stated by the supreme court in *Deramus,* we decline to so "completely change the procedure long followed in this State."

Although we hold that relators are not entitled to mandamus to direct respondents to vacate their show cause orders, as in *Deramus,* we consider it necessary in the interest of judicial economy to address the basis for the contempt charges against relators. We have concluded that relators are correct in their contention that the salary orders do not direct them to do anything. Those orders only *set* the court reporters' salaries; as stated earlier, the orders do not direct relators to do anything. It is well established that, in order for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of the required compliance in clear, specific, and unambiguous terms in order that the person will readily know exactly what duties or obligations are imposed upon him. *Ex Parte Price,* 741 S.W.2d 366 (1987); *Ex parte Slavin,* 412 S.W.2d 43, 44 (Tex.1967). Moreover, relators *may not* legally be imprisoned for violating an order by failing to do what the order *does not* require. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979); *Ex parte Rosborough,* 723 S.W.2d 273, 274 (Tex.App. —Houston [1st Dist.] 1987, orig. proceeding). Accordingly, we hold that the salary orders will not support contempt orders since they do not direct relators to do anything.

In *Deramus,* after holding that mandamus was not the appropriate remedy, the supreme court stated that the underlying contempt order was void because it was not supported by any evidence and set forth the following admonishments:

We ... assert not only the presumption *but a very firm belief that no trial judge will attempt to enforce an order that we have held to be void and direct confinement thereunder.* If this should occur it would be for the first time in the history of Texas jurisprudence so far as we know.

333 S.W.2d at 831–32 (emphasis added). Likewise, we presume and have a firm belief that respondents will *not* hold relators in contempt since we have held that the salary orders will not support contempt orders.

### THE LATER OCTOBER ORDERS

Relators next complain of orders signed by three of the respondents on October 27, October 26, and October 28 of 1987. These three orders state in essence that relators are to order the Treasurer of Dallas County to issue and deliver the checks in his possession payable to those respondents' court reporters, which checks reflect the five percent increase. Each of these orders further directs that relators comply by a date certain.

These respondents concede that they did not give relators notice and a hearing before entering these orders but argue that respondents are within their inherent powers to enforce and effectuate their earlier salary orders. We conclude that these last three orders are essentially writs of mandamus. Accordingly, we hold that these three respondents have contravened TEX.R.CIV.P. 694 because mandamus cannot issue ex parte. *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1074 (1926).

We are aware that Rule 694 further provides that any peremptory mandamus granted without notice shall be abated *on motion.* However, the arguments present-

ed to this court indicate that the three respondents do not believe that they should grant such motions. Therefore, it appears that if we were to deny relators' petition for writ of mandamus as to these last October orders, we would in effect be directing the filing of motions in the three trial courts which would not be granted by these three respondents. This would not be in the interest of judicial economy. At this point, we emphasize that the difference between these later October orders and the first set of salary orders, which all of the respondents issued in May and June, is that these later October orders actually do *direct* action and, therefore, are essentially writs of mandamus. Relators, therefore, were entitled to have an opportunity to contest such orders at a hearing after due notice to them. They were denied this right.

Accordingly, we conditionally grant the petition for writ of mandamus as to the three orders issued by three of the respondents in late October. We direct those three respondents to vacate their respective orders of October 27, 1987, October 26, 1987, and October 28, 1987, and to file certified copies of such vacating orders with the Clerk of this Court. The writ shall issue only if those three respondents fail to do so. In all other respects, the petition for writ of mandamus is denied.