Floyd GRAY, Appellant,

v.

STATE of Texas ex rel. William BROWN,
Appellee.

No. 16785.

Court of Civil Appeals of Texas.

Fort Worth.

Aug. 5, 1966.

Charles Dickens, Fort Worth, for appellant.

Doug Crouch, Crim. Dist. Atty. of Tarrant County, Gerald Weatherly, Fort Worth, for appellee.

## OPINION

PER CURIAM.

This action was brought by the State of Texas, on relation of William Brown, a candidate for the nomination as Justice of the Peace by the Democratic Party of Justice Precinct 3 in Tarrant County, Texas. Object thereof was to have it judicially declared that Floyd Gray, victor in the election for such nomination, had forfeited his right to have his name placed on the official ballot at the general election to be held in November of 1966. Following a trial before the court, without intervention of a jury, a judgment was rendered declaring the forfeiture sought.

We reverse and render according to the application here presented by appellant Floyd Gray.

Through his own ignorance the appellant failed to comply with the provisions of law —in that he did not file a statement of campaign expenditures, etc., on a day not less than seven (7) nor more than ten (10) days prior to the day of the election at which he secured the nomination of his party. He filed such on the sixth day after the election, at the same time that he filed what would have been the supplemental report thereof.

█ The prime legislative aim in the enactment of the Election Code of the State of Texas was "that the will of the people shall prevail and that true democracy shall not perish from the Lone Star State." V. A.T.S., Election Code, Art. 1.01. Any question arising under the provisions of the Code should be decided with due consideration given that objective.

A question posed by the situation in the case before us relates to the meaning, if any, to be attributed to the word "knowingly" in Art. 14.09 of the Election Code as applied to an occasion of "nonfeasance", i.e., when the guilt or fault on the part of the candidate for public office (or nomination for public office) amounts only to a

want of "timely compliance" with the provisions of Art. 14.08(b). Therein it is provided that each candidate for office must file his sworn statement of gifts and loans received and of gifts, loans and payments made and all debts and obligations incurred or contracted in behalf of his candidacy at a time not less than seven (7) nor more than ten (10) days prior to the day of the election.

Art. 14.08(h) provides that "Any candidate failing to file such sworn statement at the time provided * * * shall forfeit his right to have his name placed upon the ballot at any subsequent primary, special, or general election." Art. 14.09 provides that "Any candidate who shall knowingly permit or assent to the violation of any provision of this Chapter [Chapter 14 of the Election Code of which Art. 14.08 is also a part] by any campaign manager or assistant campaign manager, or other person, shall thereby forfeit his right to have his name placed upon the primary ballot, or if nominated in the primary election, to have his name placed on the official ballot at the general election." It was upon the forfeiture provisions of Art. 14.09 that the State and its relator prayed for the relief decreed by the trial court.

Though Art. 14.08(b) of the Election Code has been since amended, such amendments would not affect the application of principles of construction theretofore made in the case of State ex rel. Butchofsky v. Crawford et al., 269 S.W.2d 536 (El Paso Civ.App., 1954, no writ history). In that case the candidate had failed to timely file his sworn statement within the time provided by the article (Art. 14.08(b)), there having been a delay of one day. Of this the candidate who had been defeated by Crawford in a primary election sought advantage. After reviewing various cases, to be noted in the opinion, the court held that said article should be treated as *directory* as to the time when the statement was required to be filed, and that the matter of whether a candidate's failure in such respect should occasion the imposition of

the prescribed penalty would be determined under the facts and circumstances of each case. In that connection the court opined that the legislative purpose of requiring expense statements was to serve the electorate in that such would be open for public inspection that the voters might determine what persons were influencing by contributing money or credit or other substantial aid to the candidate so that all might intelligently determine whether or not they should support him. The holding of the court was that there had been a substantial compliance with such legislative purpose.

Neither before the aforesaid section of Art. 14.08 was amended, nor afterward, was there any specific expression made a part thereof relative to any violation being "knowingly" committed, nor as to any compliance therewith being "knowingly" omitted. Section (h) of Art. 14.08 and Art. 14.09 have not undergone amendment since the date of the opinion in State v. Crawford, supra.

■ Principles of legal construction applicable to the situation in State v. Crawford and to the situation in the controversy presently before this court would not be materially distinguished. Of course, in the instant case there was a delay greater than that in the Crawford case. Here the delay was beyond the date of the election in which the appellant obtained the greater number of votes, and the nomination of his political party for the office of Justice of the Peace. Here there was no satisfaction of the purpose of having the appellant's statement open for public inspection that the voters might determine what persons were attempting to influence the result of the election. It necessarily follows that appellant would not be entitled to prevail upon a ground of substantial compliance.

However, the evidence in the record is certain, and not a matter upon which an issue of fact is presented, that the appellant's statement, had it been timely filed, would have correctly shown that $205.60 was the entire expense of appellant's campaign (as of the time it should have been filed), including the filing fee, all of said amount constituting a personal expenditure. In other words we are saying as a matter of law that if the appellant's statement had been timely filed, any public inspection thereby afforded would not have caused a voter to cast his vote either for or against the appellant on election day. Indeed, it was further shown that in the week before the election only $112.00 more was spent, of which all except $10.50 was appellant's money. Appellant's campaign was financially supported by those who desired to further his candidacy only to the extent of $10.50, and this at a time when there would be no requirement that such be revealed until after the election.

■ We are convinced that only in an instance where a candidate would intentionally and culpably delay filing the required statement (in other words when he would do so with actual or implied knowledge that the electorate would be deceived concerning the identity of those who were aiding him in his efforts to win a nomination or elective office and/or the amount of aid being received therefrom) that such "sin of omission" should justify judicial deprivation of any victory won in the subsequent election. If we are correct in this conclusion then the word or term "knowingly", as found in Art. 14.09 (and proper to be implied in a construction of Art. 14.08 (h)) does have substance and meaning. It would mean that such delay or omission was caused or permitted in an attempt to influence the election.

■ It may be that proof of the mere fact of delay would establish a prima facie case by the State which if unexplained or unexcused would warrant judgment striking from the ballot at a succeeding election the name of the defaulting candidate. This we are not presently required to determine, for the state of the record suffices to establish as a matter of law that there was a complete absence of culpability on the part

of the appellant or anyone else in connection with his delay in filing a statement. Furthermore, no one was thereby deceived or injured. As we see it the situation presents that rare exception to the general rule that "ignorance of the law is no excuse". Such rule may not be invoked where to do so would defeat a legislative object and purpose. It is to be remembered that appellant was not guilty of any "sin of commission" whereby the general law of this state was violated, in consequence of which he was subjected to a penalty as in the case of a misdemeanor or felony,—and to evade the imposition of which he plead ignorance of the law. In this case, if appellant was guilty of anything it would amount only to a "sin of omission". Because of it the State seeks to punish by depriving appellant of his private right to have his name printed on the ballot as the nominee of his party.

In the absence of any culpability connected with appellant's delay in filing the required statement—and absence thereof is established—it is our conclusion and holding that to declare forfeiture of his right to be named on the ballot at the succeeding general election as the candidate of the Democratic Party for the office of Justice of the Peace in Precinct 3 of Tarrant County would be in conflict with and to defeat the legislative purpose declared in the Election Code.

Appellant also attacks the constitutionality of section (h) of Art. 14.08 and Art. 14.09 in its entirety on the theory that there is a defect in the caption of the Act of which they are part, and furthermore on the theory that such caption affirmatively suggests that the Act contains no penal provision. Since we are of the opinion that appellant is entitled to prevail for the reason heretofore discussed we do not find it necessary to consider any constitutional question.

The judgment of the trial court is reversed and rendered. The name of the appellant is not to be stricken from the official

ballot at the general election of November in 1966.

In the interest of time, and so that the question involved may be resolved by the Supreme Court of Texas, if the parties to the suit so desire, it is ordered that no motion for rehearing shall be permitted to be filed in this court.