**Charles H. NEWSOM, Appellant,**

v.

**Herman ADAMS, Jr., etc., et al., Appellees.**

**No. 7152.**

Court of Civil Appeals of Texas, Beaumont.

March 31, 1970.

Motion for Rehearing Overruled
April 1, 1970.

B. F. Whitworth, Sr., Jasper, H. A. Coe, Jr., George P. Kirkpatrick, Jr., Kountze, for appellant.

Fletcher Richardson, Silsbee, for Versie Flowers and Henry M. Donelson, Jr.

Earl Stover, Silsbee, Dwayne Overstreet, Kountze, Kenneth L. Parker, Beaumont, for appellees.

KEITH, Justice.

Plaintiff, Newsom, appeals from an order granting a temporary injunction restraining the defendant, Adams, Chairman of the Democratic Executive Committee of Hardin County (and all other members of such Committee) from placing the name of plaintiff upon the ballot as a candidate for County Treasurer in the first Democratic primary election to be held on May 2, 1970. The order related to the application for a place upon the ballot which was *then on file* with the County Democratic Executive Committee and did not affect any other application which he might thereafter file. The order similarly enjoined the defendants from placing the names of Versie Flowers and Henry M. Donelson, Jr., upon the ballot as candidates for the same office in such primary election, based upon the applications which each then had on file. The order also contained this additional clause:

"It is the further order of the Court that the period for filing Application to have one's name printed on the ballot of the

Democratic Primary to be held on May 2, 1970, be reopened and extended until 6 o'clock P.M. on the 31st day of March, 1970."

### Statement of Facts

On January 29, 1970, the incumbent County Treasurer, Clyde Haynes, made application for his name to be placed upon the ballot for such office. The application was regular in all respects, properly filed, and was accompanied by the deposit of $50.00 required under the provisions of Article 13.07a, Election Code.* Under the provisions of Article 13.12, Subdivision 2, applications for position on the ballot were required to be filed "not later than 6 p. m. on the first Monday in February preceding such primary," such being February 2, 1970 in this instance. Such applications were required to be filed with the County Chairman in cases involving county and precinct offices. Id.

At or about 5:45 o'clock p. m., on Monday, February 2, 1970, plaintiff appeared at the home of Wiley Alford, a precinct chairman and a member of the County Executive Committee (but neither chairman nor secretary thereof), at Alford's home in Kountze. There he filled out an application to become a candidate for County Treasurer and gave Alford $50.00 in cash as the required deposit.

The application and the deposit were carried by Alford to Silsbee where the defendant Adams resided, and there delivered to Adams at approximately 6:30 p. m., on Monday, February 2, 1970. Adams noted on the application form that it had been received upon that date, but the hour of receipt was not shown. The secretary of the Committee, Mrs. Mitchell, subsequently issued plaintiff an official receipt showing the deposit of the $50.00 to have been received on February 2.

In due time, as prescribed by Article 13.08(1), the County Committee met and apportioned the cost of holding the election among the several candidates, the cost being assessed at 20% of one year's salary for each of the several offices. This, in turn was divided among the several applicants or candidates for the particular office. This meeting was held on February 9, 1970, and on February 11, Adams notified Newsom of his assessment—$1,020.00. This figure was arrived at by dividing the assessment as to the office of County Treasurer ($2,040.00 or 20% of one year's salary) between the two persons who had then sought to have their names placed upon the ballot for that office, Haynes and Newsom. Newsom was advised that such sum must be paid on or before February 23, 1970. He complied on February 20 by paying an additional $970.00, which added to his original deposit of $50.00, made the total of the assessment. Adams issued an official receipt for such payment. *Haynes, receiving a similar notification, did not pay the assessment.* Instead, he delivered a letter to the chairman dated February 24, 1970, reading as follows:

> "With much regret, due to recent illness that has restricted my activities for the next several weeks, it was necessary for me to withdraw from the race of County Treasurer." (These are his words.)

We pause to note that the instrument of withdrawal was not "duly acknowledged by him" as required by Subdivision 2c, Article 13.12.

On February 25, Chairman Adams issued a "press release" which stated, among other things, that Haynes had not paid the assessment or filing fee and had "informed Chairman Adams, by phone on the night of the 23rd [of February], that he was withdrawing from the race because of illness." This paragraph follows immediately thereafter:

> "Charles H. 'Chuck' Newsom, of Kountze, filed for the position on February 2nd and paid his filing fee prior to

---

* All statutory references are to Vernon's Election Code, and all emphasis has been supplied.

the February 23rd deadline. Newsom has met all the requirements for having his name placed on the ballot according to Adams."

Continuing from the press release:

"Adams stated that he will accept applications for a place on the Hardin County Democratic Primary ballot through 6 p. m. Tuesday March 10th for the office of Treasurer of Hardin County. Article 13.12, Section 2A of the Texas Election Code provides for extending the filing deadline, 'if between the first Monday in February and the 30th day preceding the general primary, both dates included, any candidate who is seeking nomination to an office which he then holds withdraws or is declared ineligible for election to that office. * * *' Section 2C of Article 13.12 requires the Chairman to post notice of the filing deadline extention [sic] throughout the County."

Thereafter, on February 28, 1970 Versie Flowers and Henry M. Donelson, Jr., filed application to have their respective names placed on the ballot and each application was accompanied by a deposit of $50.00. On March 12, Flowers and Donelson each paid an additional $630.00 to the Committee. These latter payments were made pursuant to a letter from Adams to them dated March 11, that each must make the additional payment of $630.00 and that such must be received before midnight on Monday, March 16, 1970. Although it is not clear in our record, apparently this figure was arrived at by dividing the total assessment of $2,040.00 for the office of Treasurer into three equal parts of $680.00, which was, in turn, divided between Newsom, Flowers, and Donelson with credit for the prior payments of $50.00 being given to both Flowers and Donelson. Adams sent to Newsom a check, apparently for the difference between $1,020.00 which he had paid and $680.00 due in a three-man race, but Newsom had not cashed the check at the time of the trial.

On March 13, Newsom filed this suit seeking an injunction to prevent the Committee from placing any name upon the ballot for the office of County Treasurer other than his own, making the entire Committee, along with Flowers and Donelson, parties thereto. The court held a hearing upon the application for temporary injunction on March 16 and entered the order complained of on March 20, from which this appeal is taken.

There is very little dispute in the facts, but we need to add that Chairman Adams readily admitted the truth of the facts contained in a letter which he had written to Hon. Martin Dies, Jr., Secretary of State, under date of February 4, from which we now quote:

"On February 2, 1970, Charles Newsom of Kountze, Texas, filed an application for a place on the Democratic Primary Ballot for the position of Hardin County Treasurer. He filed his application at 5:45 p. m. with the Democratic Precinct Chairman in Kountze, Texas.

"The Precinct Chairman, Mr. Wiley Alford, has been assisting me in the collection of applications. I requested his help since he has served on the County Executive Committee for several years and because he lives in Kountze, the county seat, where many of the candidates have their offices or their homes. His assistance has been very, helpful.

"Before filing with Mr. Alford, Charles Newsom telephoned him and asked if he could file his application with him. Mr. Alford replied that he would accept the application for the County Chairman. Upon receipt of the application, Mr. Alford delivered it to me at my home in Silsbee, some nine miles from Kountze. He arrived shortly after the filing deadline of 6 p. m.

"I conditionally accepted the application, pending a ruling from you. Please reply to the above address at your convenience."

The Secretary of State, on February 9, responded to the inquiry, stating in part:

"Article 13.12 of the Texas Election Code provides that the candidate's application shall be filed 'with the county chairman of the particular county in the case of county and precinct offices.' Article 13.18 provides that the county executive committee may name a secretary, and the secretary 'is hereby authorized to receive applications for a place on the primary ballot and when so received the a application shall be officially filed.' There is no express provision in the code as to whether either or both of these officers may act through an agent. Neither is there any provision fixing or limiting the location at which an application may be received. Situations come to mind where the chairman might unavoidably be unable to accept applications personally and would have to function through an agent in order for candidates to file their applications by the statutory deadline. Although the matter is clouded with uncertainty, I am of the opinion that the chairman may designate an agent to act for him in accepting applications for filing (as distinguished from passing on the sufficiency and legality of the filed applications).

"From what you have said in your letter, it appears that you may not have looked upon Mr. Alford as your agent in the sense that delivery of the application to him would be tantamount to delivery to you in person. On the other hand, it appears that Mr. Alford believed that he had this authority to act for you and that the course of conduct between you, Mr. Alford, and other candidates who had delivered their applications to him could reasonably have led him and the persons with whom he dealt to believe he had that authority. Accordingly, Mr. Newsom stands in the same position as if you had in fact designated Mr. Alford as your agent to accept the applications, and my advise [sic] is that you should treat his application as having been filed before the deadline."

Committeeman Alford testified that he accepted Newsom's application as he had several others because Adams had told him "to act as his agent and anybody here in Kountze that wanted to file with me to accept it, go ahead and accept the money and they fill out the application *theirselves*" and that he acted in complete good faith in accepting Newsom's application. He had accepted several such applications and had delivered each to Adams on the following day, although only Newsom's application was received on the last day, February 2.

Newsom, testifying in his own behalf, said that Alford had told him, at the time of the filing "that filing that application with him was the same as filing it with the County Chairman" and that he believed in and relied upon such statements, otherwise, he would have driven to Silsbee in about ten minutes and would have delivered the application to Adams in person.

█ Flowers and Donelson were permitted to file trial amendments during the course of the hearing in which each specifically denied that Newsom had filed his application with the County Chairman within the time provided by the statute. Then follows this unique alternative pleading applicable to both Flowers and Donelson:

"Defendant, Versie Flowers, says, without admitting any wrong doing, and to the end 'that the will of the people prevail' (Art. 1.01, Texas Election Code), and that in the interest of doing equity and of justice, and based on the evidence in this case, that she is willing for the Court to find that all three of the named candidates, collectively, have not at the time of this law suit, met the requirement of law to have their names placed on the ballot for the office, which is the subject of this lawsuit."

The prayer of the trial amendments contained appropriate language in seeking the alternative relief mentioned. We overrule, summarily, plaintiff's complaint that the court should not have granted leave to file the trial amendment. Although this was not an election contest, nevertheless, the provisions of Article 13.30(7) should be applicable to this type of proceeding.

Upon the filing of the record herein, we granted plaintiff's motion to advance submission of the cause and have expedited the disposition of the cause because of the public interest in the matter.

On this appeal, plaintiff contends, basically, that his application for a place on the ballot was regular, timely received, and entitled him to a place on the ballot. He invokes the doctrine of estoppel on the question of delivery to Alford and not to Adams. From this major premise, plaintiff contends that the order of Chairman Adams ordering the reopening of the lists for additional filings was unauthorized and illegal. This, according to plaintiff, deprives Flowers and Donelson of standing to contest his position as a regular candidate upon the ballot.

Plaintiff is in agreement with the trial court's holding that Flowers and Donelson were not entitled to have their names placed upon the ballot. He is, however, in disagreement with the portion of the court's order which permits them to refile for a position on the ballot during the extended period.

### Opinion

After a careful consideration of the record, the briefs, and of the law applicable, we are of the opinion that the judgment of the trial court was correct in all respects and we affirm the judgment.

With all due deference, both to the office and to the incumbent, we differ with the Secretary of State on the agency question mentioned in the opinion and we now remove the area which is said to be "cloud-

ed with uncertainty." Subdivision 2, Article 13.12, in clear and explicit terms provides that the "application shall be filed * * * with the county chairman of the particular county in the case of county and precinct offices; * * *." Under the provisions of Article 13.18, it is provided that:

> "The county executive committee may name a secretary, * * * and the secretary is hereby authorized to receive applications for a place on the primary ballot and when so received the application shall be officially filed."

Plaintiff "was charged with knowledge of the Statute's specific provision" with reference to the filing of the application. Brown v. Walker, 377 S.W.2d 630, 632 (Tex.Sup., 1964) construing the provisions of Article 13.08 as applicable to payment of the filing fees. The statute makes no provision for the delegation of the chairman's responsibilities, except to the secretary, and the attempted delegation of the authority to Alford was not authorized. The maxim, delegatas non potest delegare [the person to whom an office or duty is delegated cannot lawfully devolve the duty on another, unless he be expressly authorized so to do], is applicable here.

In Moody v. Texas Water Commission, 373 S.W.2d 793, 797 (Austin Civ.App., 1963, error ref. n.r.e.), the court said:

> "The public duties must be performed and governmental powers exercised by the officials or body designated by law and cannot be delegated to others. * * * [citations omitted]."

See also: 47 Tex.Jur.2d, Public Officers, § 114, p. 149, and cases therein cited.

The filing with Committeeman Alford was not in compliance with the applicable statute; and, since Newsom's application was not filed with the proper official *within the time* prescribed by the statute, it was insufficient to confer any rights upon the plaintiff.

The acceptance of the filing fee by Adams and his subsequent actions with reference thereto cannot operate as an estoppel against the Committee. Justice Smith in Brown v. Walker, supra, disposed of a similar contention (377 S.W.2d at p. 632). Indeed, in that same litigation, this court faced a similar situation. See Brown v. Walker, 376 S.W.2d 854, 855 (Beaumont Tex.Civ.App., 1964, original proceedings), wherein we held that the 1963 amendment to Article 13.08 was designed to remove confusion and that:

"* * * our Legislature meant to, and did, clearly spell out the requirements and procedures which a candidate must comply with in order to have his name placed upon an official primary election ballot. It is our opinion that the requirements stated by the 1963 amendment are mandatory and must be strictly complied with."

Our record shows without dispute, that the application and the deposit were not received by either the chairman or the secretary prior to 6 p.m. on February 2, the deadline under the statute. We paraphrase these words from Justice Smith's opinion in Brown v. Walker, supra, as applicable here:

Since plaintiff, Newsom, did not comply with the mandatory requirements of Article 13.12, supra, his name cannot legally be placed upon the ballot.

We now return to the action of Chairman Adams in reopening the lists for new filings to be made within the extended time specified. Hon. Crawford Martin, Attorney General, rendered his opinion No. M–594, dated March 12, 1970, addressed to Hon. Dwayne Overstreet, County Attorney of Hardin County. In this opinion applicable to our case, the Attorney General held:

"In the instant case the incumbent's name will not appear on the ballot for the reason that he did not pay the balance of the assessment (Attorney General Opinion No. WW–1294 (1962)) and he notified the County Chairman of the Democratic Party that he was not seeking reelection. It is our opinion that the incumbent 'withdrew his candidacy by his refusal to pay the assessment within the meaning of Subdivision 2(i) (i) [2(ii)] of Section 2a of Article 13.12.'"

Plaintiff insists that Adams' action was wholly void because there was, at the time the action was taken, one eligible candidate for the position—himself. He reasons that the Legislature, having used the word "eligible" in Article 1.05 to spell out the qualifications of a candidate, intended the same meaning of the word when it is found again in paragraph 2a (iii) of Article 13.-12, citing Brown v. Darden, 121 Tex. 495, 50 S.W.2d 261, 263 (1932), in support thereof.

We need not engage in an exercise in semantics to determine whether Haynes' default in the payment of the filing fee was a "withdrawal" or resulted in his being "ineligible" for a place upon the ballot. The result reached is the same, his name could not be placed upon the ballot as a candidate for such office.

Even if we were to accept Newsom's major premise—the reopening of the lists by Adams was void so that Flowers and Donelson could not acquire any rights thereunder—we do not reach the end sought by Newsom. Flowers and Donelson will not be candidates for the office by reason of any act done by them under Adams' order of February 25, nor will plaintiff be denied a place on the ballot for such reason. These three individuals—and any others desiring to run for the office—may become candidates therefor *only* by compliance with the proper provisions of the code *and* within the time prescribed in the court's order.

There is an additional reason why Flowers and Donelson may not appear upon the ballot by virtue of their applications made under Adams' order of reopen-

ing. His order, if it had any validity, brought into play the provisions of Section (2) of Article 13.08:

"A candidate filing after the date of the aforesaid meeting [at which assessments are made] shall not be required to accompany his application with the deposit provided for in Section 185a of this code [13.07a providing for the deposit of $50.-00], *but shall pay the full amount assessed against him* by the county executive committee *within one week from the date on which his application is filed*; * * *." (Emphasis ours.)

Granted that Flowers and Donelson paid the amount requested by Adams within the time specified in his letter, *they nevertheless did not pay any sum within one week from the date of the application.* Both filed their applications on February 28 and neither made any payment until March 12. Neither Adams nor the County Executive Committee was authorized to extend the time for making the payments required by the statute. It follows that neither complied with the statutory provision by making the payment "within one week from the date on which his application is [was] filed."

Plaintiff insists that the harsh result which we reach is required and that the trial court was correct in holding that, notwithstanding the fact that these two candidates paid exactly the amount requested by the County Chairman and did so within the time specified in the notification, they are disqualified. The result is one required by the statute. Flowers and Donelson, claiming the benefits of the reopening provision in the statute, were bound to accept the obligations therein set out. If, as is asserted, they did not know the amount to pay, the short answer is that each was a candidate for County Treasurer and the total assessment for that office had already been set by the County Committee. We do not permit them to claim the benefit of the statute and wait for favorable financial terms upon which to comply with the remainder thereof.

In this posture of the case, at the conclusion of the evidence before Judge Coe, there was not a qualified applicant for a position upon the ballot. Under the state of the record, and within the prayer of the cross-action of Flowers and Donelson, his jurisdiction was invoked. Upon that day, that is March 16, 1970, he made a declaration that no one of the three was a qualified candidate, such a declaration not having been made theretofore as to either of the candidates. Upon the making of this declaration, the provisions of Article 13.12, 2a(iii) became operative. We quote the applicable portion thereof:

"* * * (iii) if between the first Monday in February and the 30th day preceding the general primary, both dates included, the only candidate who has filed for a particular office in the primary of .that party withdraws or is declared ineligible. In the enumerated circumstances, the name of the deceased, withdrawn, or ineligible candidate shall not be printed on the ballot, and applications for that party's nomination for that office may be filed not later than 6 p.m. on the 15th day following the death, withdrawal, or declaration of ineligibility of the candidate; * * *."

The District Judge was authorized under these statutory provisions to extend the time for the filing of applications for position upon the ballot for the May 3, 1970 primary election for a period of fifteen days thereafter. This he did, following the statute down to the precise closing hour therein prescribed.

Consequently, in the forenoon of this the 31st day of March, 1970, we now reaffirm the order of Judge Coe; and, for the benefit of all persons still interested in becoming candidates for the office of County Treasurer in Hardin County in the forthcoming Democratic primary election, we repeat the reopening provision relating to the office of County Treasurer found in his order:

"* * * the period for filing Application to have one's name printed on the

ballot of the Democratic Primary to be held on May 2, 1970, be reopened and extended until 6 o'clock P. M. on the 31st day of March, 1970."

Such interested persons, if any, may become candidates only (1) by making a new application for a position on the ballot for such office within the time specified, *and* (2) paying the total sum of $2,040.00 to the Executive Committee as the filing fee with the expectation that if more than one such person so complies, there will be a refund made by the Committee.

While this suit is not an election contest; nevertheless, it does involve the election process. Under these circumstances, we call to the attention of the parties the philosophy of Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946); and State ex rel. Johnson v. Otter, 379 S.W.2d 100 (Houston Tex.Civ.App., 1964, no writ).

The judgment of the trial court being correct, is in all things affirmed.