Elmer SPARKS, et al., Appellants,

v.

A. L. BUSBY, Appellee.

No. 12–82–135–CV.

Court of Appeals of Texas, Tyler.

Sept. 22, 1982.

Curtis L. Owen, Tyler, for appellants.

Laurence A. Powers, Sulphur Springs, for appellee.

PER CURIAM.

This appeal is to stay the enforcement of a temporary injunction and writ of mandamus issued by the trial court against appellant, Eddy Rabe, and party in interest Elmer Sparks. On July 7, 1982, having been presented with a petition containing 56 signatures, of which 50 valid signatures were required, Judge Loyd McKinney, County Judge of Rains County, directed County Clerk Eddy Rabe to place the name of Elmer Sparks on the General Election Ballot as an independent candidate for county judge pursuant to Article 13.52, Texas Election Code.[1]

Thereafter A. L. Busby, in an original proceeding, filed a motion for leave to file a

petition for writ of mandamus in this court. This court, in a per curiam opinion dated August 12, 1982, overruled Relator's motion for leave to file a petition for writ of mandamus due to the existence of disputed fact issues in the case.

Thereafter on August 17, 1982, A. L. Busby filed an original petition for injunction and writ of mandamus against Eddy Rabe and party in interest Elmer Sparks in the 8th Judicial District Court of Rains County, Texas. On August 26, 1982, after a bench trial the trial court overruled a plea to the jurisdiction urged by Eddy Rabe and Elmer Sparks and enjoined Eddy Rabe, the County Clerk, from placing the name of Elmer Sparks on the Rains County General Election Ballot as an independent candidate for county judge. From this order Eddy Rabe and Elmer Sparks have perfected this appeal. At the request of both parties, we have adopted their trial briefs as their briefs on appeal.

The critical issue in this appeal is whether the trial court had jurisdiction to grant relief in this matter. We find that the district court had jurisdiction to intervene, that the statutory requirements for filing the candidate's petition were not met, and therefore Elmer Sparks is not eligible to have his name appear on the November 2nd General Election Ballot. We affirm the district court's judgment.

JURISDICTION

Appellant contends that the certification of his petition was within the "election process" and as such is immune from judicial review. Proceedings which litigate the validity of elections are to be filed within thirty days after the election in accordance with Art. 9.03 of the Election Code. Appellant contends that the instant challenge to the candidate's eligibility amounts to an election contest.

Appellant asserts the case of *City of Austin v. Thompson,* 147 Tex. 639, 219 S.W.2d 57 (1949), is on point, contending all acts which are a part of the election process

1. All citations herein are to Texas Election Code Ann., unless otherwise noted.

are immune from judicial review and exempt from judicial interference. In that case the petitioner sought to enjoin an entire election from occurring. The supreme court affirmed the trial court on the basis that the holding of an election is a political function, and courts have no power to inquire into the validity of an election until it is completed. *City of Austin, supra* 219 S.W.2d at 60. However, in the case at bar the issue is not the validity of the election, but the eligibility of an independent candidate seeking a place on the ballot.

Pursuant to Article 13.50, an independent candidate may be placed on the ballot after the presentation of a valid, timely application to the county judge. Under appellant's contention this would allow the county judge to be the final arbiter, allowing no review until after the election. Candidates running in a party primary are subject to a dual screening by party officials and the party electorate. This process provides an opportunity for appropriate review of the qualifications and eligibility of candidates which is not available in the case of an independent candidate.

Appellant cites *Kolsti v. Guest,* 565 S.W.2d 556 (Tex.Civ.App.—Austin 1978, no writ), as a case in point. In *Kolsti,* the contest concerned a request that a certain referendum issue appear on the primary ballot. The appellate court affirmed dismissal for want of jurisdiction, holding that the contested referendum issue was incident to the election and beyond the power of the court. *Kolsti, supra* at 557. The *Kolsti* case further points out that, "since 1919, the law has been that no ineligible candidate may have his name placed upon the ballot at the primary, general, or special election." *Kolsti, supra* at 557. That is the very issue in this case: the eligibility of the candidate, not the validity of an election.

Appellant also relies on *Ellis v. Vanderslice,* 486 S.W.2d 155 (Tex.Civ.App.—Dallas 1972, no writ), which allows judicial action to facilitate but not interfere with the election process. The election process embraces all public elections. Although the official announcement of a candidate is within this process, *Id.* at 160, the eligibility of one seeking to be a candidate is subject to question and review. Absent such question and review the election process is subject to abuse. The actual election process is a right of the people not to be interfered with, but the right to candidacy is a privilege which is subject to strict statutory requirements. We are not willing to find that the county judge's certification of an independent candidate is within the election process.

Finally, appellant cites *Moore v. Edna Hospital District,* 449 S.W.2d 508, (Tex.Civ. App.—Corpus Christi 1970 writ ref'd n.r.e.); *Moore v. City of Corpus Christi,* 542 S.W.2d 720, (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); and *Mitchell v. Carroll Indep. School Dist.,* 435 S.W.2d 280, (Tex. Civ.App.—Fort Worth 1968, dis'd), for authority that the court has limited powers to entertain suits contesting elections. These cases all refer to the thirty-day notice of contest that is required after the day of the election in conformity with Article 9.03 of the Election Code. The issue before this court is of a different nature.

Article 14.14 of the Texas Election Code provides in pertinent part:

The district courts of this state shall have jurisdiction to issue injunctions to enforce the provisions of this code upon application by any citizen of this state.

The courts have strictly construed the eligibility requirements as being mandatory as set forth in the Texas Election Code. In the case of *Parchman v. Rodriquez,* 458 S.W.2d 239 (Tex.Civ.App.—Corpus Christi 1970, no writ), after an evidentiary hearing the district court enjoined the county clerk from placing the name of an independent candidate on the ballot because the candidate had failed to meet the eligibility requirements of Article 13.12a(5) of the Texas Election Code.

■ Where Article 14.14 grants jurisdiction to district courts to issue writs of injunction and mandamus, the supreme court and courts of appeal have exercised this jurisdiction to grant writs of injunction and mandamus when no disputed fact question

exists. *Pierce v. Peters,* 599 S.W.2d 849 (Tex.Civ.App.—San Antonio 1980, no writ); *Shields v. Upham,* 597 S.W.2d 502 (Tex.Civ. App.—San Antonio 1980, no writ); *Tyler v. Cook,* 573 S.W.2d 567 (Tex.Civ.App.—San Antonio), rev'd on other grounds 576 S.W.2d 769 (Tex.1978); *Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976, no writ). Where a factual dispute exists the district court is the appropriate forum. Either a temporary injunction or a writ of mandamus is an acceptable remedy for removal of a candidate from the ballot when he has failed to strictly comply with the eligibility requirements. In the instant case the issue is the eligibility of Elmer Sparks as a candidate, not the validity of holding the election. The cases of *Pierce, Shields, Tyler* and *Geiger* demonstrate that eligibility can and should be questioned prior to the actual election.

## ON THE MERITS

In order to have his name appear on the ballot as an independent candidate, appellant Elmer Sparks was required to present a written application to the county judge, signed by a number of qualified voters equal to at least five percent of the total vote cast for governor in such county at the last preceding gubernatorial election. Art. 13.50(3). According to the record, the number of votes cast for governor in Rains County at the last preceding gubernatorial election was 984. Five percent of this figure is 49.2. Therefore, appellant was required to obtain valid signatures from at least 50 qualified voters of Rains County to become eligible as an independent candidate for the general election.

The application of appellant Sparks purported to contain the valid signatures of 56 qualified voters of Rains County. The district court found that ten of these were invalid, for various reasons discussed below, thereby reducing the number of valid signatures to 46, which number is less than the required minimum of 50. Accordingly, the district court issued an injunction to prevent the county clerk from placing Sparks' name on the official ballot.

The provisions of the Election Code relied upon by the district court to invalidate these ten signatures, in pertinent part, are as follows:

Article 13.50(4) "... No person shall sign such application unless he is a *qualified voter,* and no person who has voted at *either* the general primary election *or* the runoff primary election of any party shall sign an application in favor of anyone for an office for which a nomination was made at *either* such primary election ...."

Article 13.50(5) "In addition to *the person's signature,* the application shall show each signer's address, *the number of his voter registration certificate,* and the date of signing."

Article 1.01a(46) "Qualified voter or qualified elector means a person who meets all qualifications and requirements for voting as prescribed in Section 34 of this code (Article 5.02, Vernon's Texas Election Code)."

Article 5.02(a) "Every person subject to none of the foregoing disqualifications, who is a citizen of the United States and a resident of this state and is eighteen years of age or older, and who has complied with the registration requirements of this code, is a qualified voter ..."

Article 5.13a(4) "A registration becomes effective on the 30th day after the date on which the registrar receives the application or on the day that the registrant attains the age of 18 years (the day before his 18th birthday), whichever is later ..." (Emphasis added.)

The courts of this state have consistently required that candidates comply strictly with all statutory requirements in order to have their names placed on a ballot. *Brown v. Walker,* 377 S.W.2d 630, 632 (Tex. 1974); *Shields v. Upham, supra* at 503; *Geiger v. DeBusk, supra* at 439.

In the *Brown* case a $50.00 assessment was paid by sending it to the county chairman by first-class United States mail, rather than by registered or certified mail as required by the statute. Even though the money was timely deposited and duly re-

ceived, the supreme court concluded that strict compliance was necessary and denied the incumbent district attorney a place on the ballot.

In *Shields* the court had before it a nominating petition for a candidate. Of the 211 voters signing the petition, only seven complied with the statutory requirement that they identify the city in which their residence was located. The court, citing *Geiger* and *Brown,* held that strict compliance with the statute was required, and that the petition did not comply with the statutory requirements. Therefore, the court denied the candidate's motion for writ of mandamus to require the appropriate official to place his name upon the ballot.

■ Likewise, in the *Geiger* case the court considered a nominating petition which was not verified by affidavit as required by Article 13.08(d) of the code. In ordering the candidate's name deleted from the ballot for failure to comply with the statute, the court held that the clear and specific directions in the statute as to verification are mandatory and not directory. Hence, a candidate must strictly comply with these provisions. The provisions of the election laws relating to voters are construed as directory while those governing candidates are mandatory; the right to vote is a fundamental right, whereas the right to hold office is in the nature of a privilege. See *McWaters v. Tucker,* 249 S.W.2d 80 at 82 (Tex.Civ.App.—Galveston 1952, no writ).

■ In the instant case the district court held four of the signatures invalid, because they were not the signatures of the voters themselves. Appellants contend that the persons signing the voters' names did so as agents. The Texas Election Code does not authorize a person to act as the agent of another in signing an Chapter 13 petition. In the first place Article 13.50(5) speaks of *the person's* signature, and requires *that person's* address and registration certificate number. Secondly, the petition is essentially a substitute for a primary election. Each person signing the petition is in effect casting a vote for the person whose name appears on the petition as a candidate for the public office. Just as a person could not act as an agent for another in casting a vote in a primary election, the signature on the petition is personal and not delegable. The only article we find in the Texas Election Code which authorizes a person to act as an agent for another is Art. 5.13a which deals with applications for voter registration certificates. In view of the requirement of strict compliance by candidates mandated by our supreme court, it is our opinion that to allow a person to sign an Chapter 13 petition as agent for another would stretch the provisions of the Election Code beyond permissible boundaries.

■ Two of the signatures in the instant case were held invalid because these voters had either voted in the Democratic Primary or the Democratic Primary Runoff elections. These signatures were invalid under Art. 13.50(4), *supra.* Appellant contends that one of these signatures, that of Dora Adair, is valid because she voted only in the runoff. There was no runoff for the office of county judge at said runoff election. As authority for this contention appellant cites *Weatherly v. Fulgham,* 153 Tex. 481, 271 S.W.2d 938 (1954). In that case the democratic candidate for district attorney had won a clear majority in the first primary, and thus the runoff primary had no bearing on that nomination. The supreme court held that persons who voted only in the runoff election could validly sign a nominating petition of an independent candidate for the same office. Art. 13.50, at that time, provided as follows: "... no person who has voted at a primary election shall sign an application in favor of anyone for an office for which a nomination was made at such primary election." However, Art. 13.50 was amended in 1963 and the amended version is set out above in this opinion. This amendment provides that no person who voted in *either* the general primary *or* the runoff primary shall sign an application in favor of a candidate for an office for which a nomination was made at *either* such primary election. The clear language of the statute permits no construction

which would validate Dora Adair's signature.

■ Two more signatures in this case were held invalid because these persons were not registered voters of Rains County when they signed appellant's petition, and no voter registration certificate number accompanied these signatures on the petition. Since Art. 13.50(4) requires signatures of qualified voters, and Art. 13.50(5) specifically requires a voter registration certificate number, the requirements of the statute have not been met. In light of the decision in *Shields v. Upham, supra* at 504, these two signatures are invalid. Since strict compliance with the Election Code is required of a candidate, the eight signatures heretofore discussed must be disregarded in considering whether appellant has obtained the required number of valid signatures to secure for himself a place on the official ballot.

■ The last two signatures, those of Betty Sullivan and Cara Wallace, were held invalid solely because their voter registration certificates had not yet become effective, as provided in Article 5.13a(4), *supra*. Although these two persons would not have been qualified to vote in July, the month the petition was signed, their registration certificates became effective on August 1 and 2, respectively. Article 13.51 requires that the signer of such a petition state "... I am a qualified voter at the next general election ...." These two persons would be qualified to vote at the next general election in November. Although we believe the trial court erred in holding these two signatures invalid, such action by the court was immaterial as reflected above.

■ In an appeal from an order granting or denying a temporary injunction the appellate court is limited to determining whether there has been a clear abuse of discretion in granting or denying the interlocutory order. *Davis v. Huey,* 571 S.W.2d 859, 861–2 (Tex.1978); *State v. Southwestern Bell Telephone Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Anderson County Taxpayers v. City of Palestine,* 576 S.W.2d 679, 682 (Tex.

Civ.App.—Tyler 1979, no writ). Having reviewed the record before us, we are of the opinion that the trial court did not abuse its discretion in granting appellee's application for a temporary injunction. Although the trial court's judgment also granted the issuance of a writ of mandamus, we believe the issuance of such writ was a duplication of the injunctive relief already granted and not necessary to the disposition of the case.

Judgment of the trial court is affirmed. In view of the fact that ballots for the general election must be printed before the statutory deadline, no motion for rehearing will be entertained.