James P. WALLACE, Relator,

v.

Charles Ben HOWELL and George W. Strake, Jr., Chairman of the State Republican Executive Committee, Respondents.

Charles Ben HOWELL, Relator,

v.

James P. WALLACE, et al., Respondents.

Nos. C–5034, C–5057.

Supreme Court of Texas.

March 12, 1986.

Randall B. Wood, Austin, for James P. Wallace, relator in No. C–5034, and respondent in No. C–5057.

F. Dean Armstrong, Dallas, Howard D. Pattison, Athens, Leonard Davis, Potter, Guinn, Minton, Roberts & Davis, P.C., Tyler, Wayne Massey, Austin, for Charles Ben Howell, relator in No. C–5057 and respondents in No. C–5034.

OPINION

HILL, Chief Justice.

On January 23, 1986, Charles Ben Howell filed as a candidate for the office of "Associate Justice, Supreme Court, Place One-Sears McGee" in the Republican primary. On the last day to file as a candidate for office, Howell attempted to switch his candidacy from Place One to Place Three, Texas Supreme Court. To accomplish this, he contemporaneously filed with the Republican Party Chairman an application for a place on the ballot for "Associate Justice. [sic] Supreme Court, Place Three-James P. Jim Wallace" along with a letter containing the following:

1.

On January 23, 1986, I presented to you my application for a place on the Republican Party General Primary Ballot stating "Office Sought: Associate Justice, Supreme Court, Place One-Sears McGee."

2.

Contemporaneous with the delivery hereof, I present to you my application for a place on the Republican Party General Primary Ballot stating "Office Sought: Associate Justice, Supreme Court, Place Three-James P. Jim Wallace."

3.

Expressly conditioned upon the acceptance and approval of the contemporaneous application mentioned in ¶ 2 hereof and only to become effective if and when I have qualified to have my name appear on the primary ballot as a candidate for said place three, I hereby conditionally withdraw as a candidate for the office mentioned in ¶ 1 hereof and upon the conditions aforesaid, request conditionally that my name be omitted from the ballot as a candidate for said place one.

The Republican Chairman accepted the conditional withdrawal and allowed Howell to become a candidate for Place Three.

We are called upon in this original mandamus proceeding to determine whether these filings legally effectuated Howell's purposes. We hold that such filings did not and order Republican Party Chairman, George W. Strake to place Charles Ben Howell's name on the ballot as a candidate for Justice of the Supreme Court-Place One.

The recently codified Texas Election Code specifically addresses the issue before us as follows:

§ 141.033. Filing Applications for More than One Office Prohibited

(a) A candidate may not file applications for a place on the ballot for two or more offices that:

(1) are not permitted by law to be held by the same person; and

(2) are to be voted on at one or more elections held the same day.

(b) If a person files more than one application for a place on a ballot in violation of this section, each application filed subsequent to the first one filed is invalid.

(c) This section does not apply to candidacy for the office of president or vice-president of the United States and another office.

Tex.Elec.Code Ann. § 141.033 (Vernon Pamph.1986). The legislative history behind Section 141.033 sets forth its intended effect:

The revised law expands the prohibition against candidacy for two or more offices on the ballot that may not be held by the same person to include any such offices to be voted on at one or more elections held on the same day. The section provides that only the first of such applications for a place on the ballot is effective.

Tex.Leg.Council, Report of the Election Code Study Committee 100 (1985).

Relator Wallace contends that Howell's name must be stricken from the ballot for Place Three because he filed an application for a place on the ballot while his previous application was still on file, thereby violating Section 141.033. We agree. The express language of Howell's withdrawal provides that it was to become effective only *after* he had been accepted as a candidate for the second race, that is, Place Three. Thus, when Howell filed his application for Place Three he then had filed applications for a place on the ballot for two offices not permitted to be held by the same person and, pursuant to Section 141.033(b), the second application is invalid.

This result is mandated by the plain language of Section 141.033 and this court's previous decisions that statutory requirements concerning candidacy for political office are mandatory and are to be strictly enforced. *E.g., Brown v. Walker,* 377 S.W.2d 630 (Tex.1964); *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570 (1944). This court's recent decision in *Painter v. Shaner,* 667 S.W.2d 123 (Tex.1984), reaffirmed the rule that statutory mandates to be met by candidates should be strictly construed to ensure compliance. *See also: Leach v. Fischer,* 669 S.W.2d 844 (Tex.App.—Forth Worth 1984) (orig. proceeding); *Sparks v. Busby,* 639 S.W.2d 713 (Tex.App.—Tyler 1982, writ dism'd); *Shields v. Upham,* 597 S.W.2d 502 (Tex.Civ.App.—El Paso 1980) (orig. proceeding); *Gray v. Vance,* 567 S.W.2d 16 (Tex.Civ.App.—Fort Worth 1978) (orig. proceeding); *Geiger v. DeBusk,* 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976) (orig. proceeding); *Newsom v. Adams,* 451 S.W.2d 948 (Tex.Civ.App.—

Beaumont 1970, no writ); *Bryant v. Dallas County Democratic Executive Committee*, 451 S.W.2d 803 (Tex.Civ.App.—Dallas 1970) (orig. proceeding). Because Howell filed more than one application for a place on the ballot in violation of Section 141.033 of the Texas Election Code, we hold that his application for Place Three, being subsequent to the first one filed, is invalid. Tex.Elec.Code Ann. § 141.033(b) (Vernon Pamph.1986).

In response to Wallace's petition for writ of mandamus, Howell seeks a writ of mandamus removing Wallace from the ballot for Place Three. Specifically, Howell contends (1) that Wallace has improperly denominated the office for which he wishes to run as "Justice, Supreme Court *of Texas;*" (2) that Wallace's statement in his oath that he is running for the office of "Supreme Court" invalidates the application because the "Supreme Court" is a tribunal, not an office; (3) that Wallace's payment of the filing fee by check amounted to conditional payment in violation of the Election Code; and (4) that Wallace's check was made payable to the "Texas Democratic Party," an entity, whereas the Election Code requires that the application and fee be filed with the party chairman. We find no merit in any of Howell's contentions. Wallace's application and filing fee payment conform to the Election Code's mandatory requirements. *See* Tex.Elec.Code Ann. §§ 141.-031, 172.021(b), 172.022(a)(1) (Vernon Pamph.1986). The application and filing fee were indisputably delivered to Democratic Party Chairman Slagle as required by Section 172.022(a)(1) of the Election Code. Therefore, Howell's petition for writ of mandamus is denied.

We grant the writ of mandamus requested by Wallace and order that Republican Party Chairman Strake remove Howell's name from the ballot for Place Three and place Charles Ben Howell's name on the ballot as a candidate for Justice, Supreme Court, Place One.

GONZALEZ, J., concurring and dissenting.

McGEE and WALLACE, JJ., not sitting.

GONZALEZ, Justice, concurring and dissenting.

I agree with the court's denial of Howell's writ of mandamus. However, I disagree with the court's grant of Wallace's writ of mandamus and its holding that Howell is ineligible to run for Place 3 on the Supreme Court. Therefore, I respectfully dissent for two reasons: one, the majority confuses strict compliance with strict interpretation of the Election Code; and two, under the facts of this case, the majority's strict interpretation of the Election Code provisions on filing and withdrawal is inappropriate for determining Howell's election eligibility.

The court relies on § 141.033 of the Election Code; it provides:

(a) A candidate may not file applications for a place on the ballot for two or more offices that:

(1) are not permitted by law to be held by the same person; and

(2) are to be voted on at one or more elections held on the same day.

(b) If a person files more than one application for a place on a ballot in violation of this section, each application filed subsequent to the first one filed is invalid. . . .

Tex.Elec.Code Ann. § 141.033 (Vernon Pamph.1986). The purpose of this section is to prevent someone from running for two offices in the same election. The court holds that under the literal wording of the withdrawal, it only became effective after acceptance of the second filing. Thus, the court reasons Howell violated the Election Code's prohibition against double filing. I disagree.

I. *Strict Compliance versus Strict Construction*

The majority chooses to focus on Howell's filing two applications instead of looking at Howell's withdrawal. Election Code § 145.001 governs the method of withdrawal of a candidate. Subsection (d) states that "the time of withdrawal is the time

that an effective withdrawal request is filed." An effective withdrawal must: (1) be in writing and be signed and acknowledged by the candidate; and (2) be timely filed with the appropriate authority as provided in the Code. It is undisputed that the withdrawal request was in writing, properly signed and acknowledged, and timely filed with the proper authority. Howell met all the requirements for an "effective withdrawal." This court, then, should hold that the time of withdrawal was when the request was filed.

The court fails to cite any authority which prohibits simultaneous withdrawal and application. The court's interpretation implies that simultaneous withdrawal and refiling is different than withdrawing from one race and then filing in another race a second later. The majority does not explain why there should be such a technical distinction.

The central focus should be on the effect of the withdrawal in connection with the simultaneous application for a place on the ballot. Howell's withdrawal states in part:

Expressly conditioned upon the acceptance and approval of the contemporaneous application ... [for Place 3] and only to become effective if and when I have qualified to have my name appear on the primary ballot for said Place 3, I hereby conditionally withdraw as a candidate for ... [Place 1] and upon the conditions aforesaid, request conditionally that my name be omitted from the ballot as a candidate for said Place 1.

The form of the withdrawal insures that Howell could only be a candidate for one office at any one time. The instant he qualified as a candidate for Place 3, his withdrawal became effective and Howell ceased being a candidate for the Place 1 race. Howell was merely attempting to preserve his eligibility for one of the two races.

The majority states that we have "on many occasions, strictly construed [election code requirements] to ensure compliance by candidates." The cases cited by the majority are distinguishable. In *Bur-roughs v. Lyles*, 142 Tex. 704, 181 S.W.2d 570 (1944), this court held that candidates could not be placed on the ballot when their applications were not received by the specified filing deadline. In *Brown v. Walker*, 377 S.W.2d 630 (Tex.1964) the candidate attempted, after the specified deadline, to pay his assessments by regular mail instead of by registered or certified mail. Both of the above cases deal with *strict compliance* with the statute's definite requisites, not with *strict construction or interpretation* of how a statutory provision applies to an unspecified situation.

The most recent Texas Supreme Court case relied upon by the court is *Painter v. Shaner*, 667 S.W.2d 123 (Tex.1984) where the candidate attempted to file his application on the last day for filing. Article 13.12(c) of the Election Code specified that a candidate file his application with the county chairman by six o'clock p.m. on that date. The county chairman's office was closed, the candidate then drove approximately 170 miles to meet the chairman at eight o'clock p.m. that evening. He tendered the application and filing fee which was received. Subsequently, the application was rejected because of its late filing.

Indisputably, the candidate in *Painter* did not meet the requirements of the Election Code. While I agree with the majority that the candidate was not at fault in any way, still he did not timely file. Dispite the candidate's failure, this court ordered that his name be placed on the ballot. This court looked beyond the technical requirements of the Election Code and, applying an equitable rather than rigid construction, allowed the candidate a late filing. The same equitable principles are clearly applicable in the present action. The majority fails to explain why these equitable principles do not apply in this case, particularly when the Election Code does not address simultaneous filing and withdrawal.

The other authorities cited by the majority are equally distinguishable—all address strict compliance. *See Leach v. Fischer*, 669 S.W.2d 844 (Tex.App.—Fort Worth 1984) (orig. proceeding) (filing fee check

written to wrong party); *Sparks v. Busby*, 639 S.W.2d 713 (Tex.App.—Tyler 1982, writ dism'd) (failure to have adequate number of qualified voters on petition); *Shields v. Upham*, 597 S.W.2d 502 (Tex.Civ.App.—El Paso 1980) (orig. proceeding) (failure to show street address and county of registration certificate in petition); *Gray v. Vance*, 567 S.W.2d 16 (Tex.Civ.App.—Fort Worth 1978) (orig. proceeding) (inadequate information on petition); *Geiger v. DeBusk*, 534 S.W.2d 437 (Tex.Civ.App.—Dallas 1976) (orig. proceeding) (failure to attach affidavit in lieu of filing fee); *Newsom v. Adams*, 451 S.W.2d 948 (Tex.Civ.App.—Beaumont 1970, no writ) (failure to file with the proper official); *Bryant v. Dallas County Democratic Executive Committee*, 451 S.W.2d 803 (Tex.Civ.App.—Dallas 1970) (orig. proceeding) (payment of filing fee with check returned for insufficient funds). The linchpin of these cases is that candidates are not free to disregard the Election Code's mandatory provisions. These authorities do not involve statutory construction; no interpretation is necessary.

## II. *Public Policy Dictates Against the Court's Strict Interpretation*

The Election Code does not contain any provision which prescribes strict construction of the Code. Nor does the Code prohibit simultaneous filing and withdrawal. The majority's narrow interpretation of the applicable Election Code provisions is inappropriate. The law is well established that any constitutional or statutory provision which restricts the right to seek public office should be construed against ineligibility. *See Hall v. Baum*, 452 S.W.2d 699, 702 (Tex.1970); *Willis v. Potts*, 377 S.W.2d 622, 623 (Tex.1964). *See also Strake v. The Court of Appeals for the First Supreme Judicial District*, 29 Tex.Sup.Ct.J. 240, 243, 704 S.W.2d 746 (Gonzalez, J. dissenting). Thus, the applicable Election Code provisions on filing and withdrawal should be construed broadly in favor of eligibility of the candidate.

The Texas courts have recognized the underlying theme of our election process. In *Gray v. State*, 406 S.W.2d 934 (Tex.Civ.App.—Fort Worth 1966, writ dism'd), the court of appeals noted, under the former election code, that one of the primary aims in the "enactment of the Election Code of the State of Texas was 'that the will of the people shall prevail and the true democracy shall not perish from the Lone Star State'.... Any question arising under the provisions of the code should be decided with due consideration given that objective." *Id.* at 935. The people's will is thwarted when this court disallows alternative choices for public office by excluding candidates for a particular place on the ballot for reasons wholly unrelated to any legitimate public policy or to their essential qualifications. While the strict compliance doctrine helps ensure the orderly conduct of democratic processes, the asserted strict construction rule as applied in this case undermines our democratic process.

Indeed, in *Painter*, this court cited with approval a Florida decision, *Bayne v. Glisson*, 300 So.2d 79 (Fla.App.1974), where the court stated:

> Public policy ... favors affording the people an opportunity to make a choice in the election of their public officials.... The tendency has been and still is, to extend further the privilege of the people to participate in their government ... rather than to curtail such participation by the people.

*Id.* at 82.

Participation in government is an important element of our democratic process. The rights of candidates to participate in an election are similar to the constitutional right to vote in elections. In *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), the United States Supreme Court recognized that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on

voters." Recently, that court further observed that "the impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983). Although these cases address different issues, the underlying rationale clearly favors a policy of broad constuction to allow voters a choice of candidates.

For the above reasons, I would deny Wallace's petition for writ of mandamus.